BRIGETTE SEWAR, by Her Parent and Natural Guardian, FRANCES L. BARNES et al., Respondents, v GAGLIARDI BROTHERS SERVICE et al., Defendants, and RIDGE ROAD EXPRESS, INC., et al., Appellants. (Appeal No. 1.)

BRIGETTE SEWAR, by Her Parent and Natural Guardian, FRANCES L. BARNES et al., Plaintiffs, v GAGLIARDI BROTHERS SERVICE et al., Respondents, and RIDGE ROAD EXPRESS, INC., et al., Appellants. (Appeal No. 2.)

Fourth Department, July 13, 1979

**APPEARANCES OF COUNSEL**

*Miles, Cochrane, Grosse, Rossetti & Chelus (Sheldon Hur-witz* of counsel), for appellants.

*James J. Sansone (Stanley Grossman* of counsel), for respondents in Appeal No. 1.

*Earl, De Lange, May, Lerch & Jones (William H. Earl* of counsel), for respondents in Appeal No. 2.

**OPINION OF THE COURT**

SIMONS, J.

These are appeals from two judgments of Supreme Court entered after jury verdicts of $2,000,000 in favor of the infant plaintiff, Brigette Sewar, for personal injuries, and $60,000 in favor of her mother in the mother's derivative cause of action. Plaintiffs sought damages arising from injuries sustained by Brigette in an accident which occurred as she crossed the intersection of Route 31 and Wilson Road near Lockport, New York. While doing so, she was struck by a truck traveling east on Route 31, owned by defendant Gagliardi Brothers Service and operated be defendant Camillo Gagliardi. Shortly before the accident Brigette had disembarked from a school bus which had stopped on Wilson Road. Plaintiffs alleged that the accident was caused by the negligence of the owner of a school bus, appellant Ridge Road Express, Inc., its driver, appellant Kirk, defendants Gagliardi Brothers Service and Camillo Gagliardi and the Lockport Board of Education.

Plaintiffs settled their claims against the board of education before trial and the jury verdicts in favor of plaintiffs were against appellants Kirk and Ridge Road Express, Inc., alone. The jury found no cause for action against the owner and operator of the Gagliardi vehicle.[1]

Appellants were operating the school bus under a contract with the Lockport Board of Education. They cross-claimed against the board and the Gagliardi defendants, seeking apportionment and contribution. The cross claim against the Gagliardis was dismissed on the jury's verdict of no cause for action, and the cross claim against the board of education was dismissed after the apportionment issue was submitted sepa-

---

1. There is always the possibility in trials involving difficult issues of liability, as this did, that the jury's verdicts may be inconsistent. That possibility is present here, although because of the absolute liability imposed upon appellants, we find the verdicts could not be inconsistent. Any doubt could have been removed and the jury aided in reaching its verdicts if the court had submitted interrogatories to it (see *Bolm v Triumph Corp.,* 58 AD2d 1014).

rately to the jury and it found no cause for action on that cross claim.

The action against the Gagliardis involved only questions of fact and we affirm that judgment.

■ The judgments against appellants rest upon the claimed negligence of the bus driver, appellant Kirk, in discharging plaintiff on Wilson Road near the intersection of Route 31. The general rule is that a school board (and those acting for it) owe a duty of reasonable care to pupils in its custody. This common-law duty applies during the period the pupils are transported to and from school and it continues until the pupils have been safely discharged from the school bus (see *Pratt v Robinson,* 39 NY2d 554, 561; *McDonald v Central School Dist. No. 3,* 179 Misc 333, affd 264 App Div 943, affd 289 NY 800). The school bus must discharge its passengers at a safe bus stop, a "safe spot" (see *Pratt v Robinson, supra,* p 560; *Gleich v Volpe,* 32 NY2d 517). The responsibility for locating the bus stop in this case, however, rested upon the Lockport Board of Education and it was not an issue between plaintiffs and appellants. More important, insofar as these actions are concerned, was the continuing duty imposed on the bus driver to exercise reasonable care to insure that discharged pupils reached a position of safety before moving his vehicle (see *Pratt v Robinson, supra; McDonald v Central School Dist. No. 3, supra; Machenheimer v Falknor,* 144 Wash 27) and in addition to this common-law duty the statutory duty to instruct pupils required to cross the highway on which the bus was traveling to cross in front of the bus and also to keep the bus halted, with red lights flashing, until the pupils crossing had reached the opposite side of the highway (Vehicle and Traffic Law, § 1174, subd [b]). Failure to fulfill the statutory duty results in the imposition of absolute liability upon the operator if the violation is the proximate cause of injury to a pupil *(Van Gaasbeck v Webatuck Cent. School Dist. No. 1,* 21 NY2d 239).

On the day of the accident, November 1, 1974, Brigette Sewar was 12 years old. She lived on the north side of Route 31, east of the Wilson Road and was a passenger on appellants' school bus returning home from school. As the bus proceeded on its regular run that afternoon, it traveled east on Route 31 and then made a right turn south onto Wilson

Road[2] where it stopped and discharged Brigette and five other students. The students exited on the paved portion of Wilson Road, about 50 feet from the edge of Route 31, and then walked along the west side of the bus towards its rear. As they did so, the operator drove away leaving them in the road. Brigette, her sister, and one or two others continued walking toward Route 31 intending to cross the intersection diagonally, southwest to northeast. Brigette was ahead of the others and for some unexplained reason she ran into Route 31, looking to the east as she did. When Brigette started to run, the Gagliardi truck was close upon the intersection and traveling easterly towards it. Defendant Gagliardi tried to turn his truck north to avoid her but at about the time the front of the truck reached the center of the intersection, Brigette ran into its side. The mirror on the right hand door of the truck struck Brigette in the left rear of the head. After the impact, she lay in the southeast quadrant of the intersection.

Appellants contended that before Kirk moved the bus, he crossed the children over in front of it to the east side of Wilson Road in the manner provided by statute and the rules of the board of education.[3] There is convincing evidence, however, that after leaving the bus the children walked along its west side toward Route 31, that no direction to do otherwise was given to them by the operator that day (or, for that matter, at any time in the fall of 1971), that Brigette never reached either the west shoulder or the east shoulder of Wilson Road and that by the time the children reached a point about 20 feet south of Route 31 the bus had departed.

The bus driver's obligation to exercise reasonable care in discharging his passengers included seeing them to the westerly shoulder of the highway, or if he knew that some of the pupils lived east of Wilson Road, crossing them over to the east side of the highway in front of the bus before departing. There was evidence that Kirk knew that Brigette and some of her companions lived east of Wilson Road and that, knowing that, he failed to halt his bus and instruct the children to cross in front of it thereby violating subdivision (b) of section 1174 of the Vehicle and Traffic Law.

---

2. The intersecting roadway north of Route 31 was known as Sandpit Road but counsel concede it is an extension of Wilson Road.

3. Kirk testified that he did instruct the children to cross in front of the bus and that they did so.

■ Appellants contend that section 1174 of the Vehicle and Traffic Law does not apply in this case because the accident occurred on Route 31. We agree that absolute liability could not be imposed on defendant Gagliardi under subdivision (a) on these facts because his vehicle was traveling on a highway other than the highway the school bus was on (cf. *Dean v Baumann,* 39 AD2d 138, affd 32 NY2d 756).

The statutory duty stated in subdivision (b),[4] however, is independent of that in subdivision (a), and it applies to the bus driver in all cases, whether the bus stops between intersections or at an intersection. The school bus is absolutely liable if the pupil is struck at an intersection by a vehicle proceeding on the same highway as the school bus *(Van Gaasbeck v Webatuck Cent. School Dist. No. 1, supra)* and nothing in the statute's language suggests a different rule if the vehicle striking the child is proceeding on the intersecting highway. The Legislature's obvious purpose was to protect school children crossing the highway and the enhanced safety provided by a halted school bus with flashing lights is even more necessary when pupils disembark at intersecting highways than it is when they exit a bus in the middle of a block. The flashing lights may not be visible from all directions but at least the bulk of the bus serves as a visual warning to other vehicles if it delays its departure until the passengers reach a place of safety and are left on their own. The statute should be construed to effectuate the intent of the Legislature, expressed in the report of its committee, that a bus shall remain stationary upon discharging pupils and the driver of the stopped bus "shall watch the highway for *any* indication of danger, and in the event *any danger* does arise, take proper precautions to warn the children" (see 7 NY Legis Doc, 1954, No. 36, p 99; emphasis added). Appellants' bus had stopped on Wilson Road and at the time of the accident Brigette was crossing that same road, west to east, albeit she was crossing in the intersection of Route 31 and in a diagonal direction. She came within the terms of the statute and was entitled to its protective provisions until she left the custody of the school and the bus and reached a position of safety.

---

4. "The driver of such school bus, when discharging pupils who must cross the highway, shall instruct such pupils to cross in front of the bus and the driver thereof shall keep such school bus halted with red signal lights flashing until such pupils have reached the opposite side of the highway." (Vehicle and Traffic Law, § 1174, subd [b].)

■ The court charged the jury on these common-law and statutory duties of care. To the extent that the charge failed to correctly state the law, the charge was more favorable than that to which appellants were entitled and the errors are not grounds for reversal (see *Londa v Dougbay Estates,* 40 NY2d 1001).

■ The critical issue is not so much the duty that appellants owed Brigette and their failure to fulfill their legal duty; that breach is fairly established on the record. The more serious issue is whether appellants' negligence was a proximate cause of her injuries. The evidence of causation was sufficient if it established facts and conditions from which it may reasonably be inferred that appellants' negligence was a substantial factor in producing plaintiff's injuries *(Wragge v Lizza Asphalt Constr. Co.,* 17 NY2d 313, 320), and where different reasonable inferences are possible, the question of proximate cause is for the jury *(Pagan v Goldberger,* 51 AD2d 508; cf. *Ventricelli v Kinney System Rent A Car,* 45 NY2d 950; *Sheehan v City of New York,* 40 NY2d 496). In this case the action of the school bus and its driver was not a neutral or passive factor in the accident which followed and the jury could reasonably consider the following points on the issue of causation. First, it is clear from the evidence that Brigette never completed crossing Wilson Road. She was struck by the Gagliardi truck in the center of that road. She was injured while crossing the highway that Kirk was obliged by statute to see her safely across. Second, Kirk's failure to warn her and see her safely to the easterly side of Wilson Road increased the hazard because she then was obliged to cross two highways rather than one and she was obliged to do so without the benefit of the bus' presence. Third, there was evidence that the southwest corner of the intersection was partially obstructed by trees and brush.

It was for the jury to weigh these relative hazards but it could find that if Brigette had properly crossed Wilson Road and then attempted to cross Route 31 from the southeast corner rather than from its pavement, (a) defendant Gagliardi would have had a better view of her and his time to react would have been fractionally longer, (b) Brigette would not have been required to cross the intersection diagonally and her view of vehicles approaching from the west would have been improved. These questions were sufficient to take the issue of causation to the jury and it was for them to say

whether appellants' negligence was the proximate cause of the accident.

■ We do not find it controlling that the accident happened at a point more or less removed from the bus stop or after the bus had departed. The accident happened while Brigette was crossing Wilson Road and before appellants fulfilled their obligation to see that she had reached a position of safety. The facts differ from those in the *Van Gaasbeck* case *(supra)* only insofar as the vehicle involved there was traveling on the same highway as the bus. In *Van Gaasbeck,* the infant plaintiff was discharged at the edge of the highway between two intersections. The driver knew that he had to cross to the other side but he drove off, leaving plaintiff walking along the shoulder to the nearest intersection. When he attempted to cross the highway at the intersection, he was struck by a motorist proceeding on the same highway the bus had traveled. The Court of Appeals imposed absolute liability on the school bus and found, as we do here, that proximate cause was a question of fact for the jury.

■ ■ Appellants contend that the court erred in refusing its request that the jury should not consider whether there might have been a "safer" bus stop. Although there is no duty on a school board to select the safer of two safe stops (see *Pratt v Robinson,* 39 NY2d 554, *supra),* there is a good deal of testimony in the record suggesting that it might have been wiser to locate the stop on Route 31 rather than Wilson Road. As noted, the obligation to establish the bus stop rested with the school district, not appellants. The court correctly submitted to the jury only two theories of liability against appellants, the first grounded upon common-law negligence in discharging the pupils on the pavement, and the second resting on the statutory obligation to cross the children to the east side of the highway in front of the bus. It instructed the jury that if it failed to find a liability under either of those two theories, it should return a verdict of no cause for action. It might well have charged that appellants had no duty to select a safer bus stop, but its refusal to do so is not grounds for reversal under the circumstances.

The establishment of the bus stop was relevant to appellants' cross claim for contribution from the board of education and for apportionment based upon plaintiffs' prior settlement with the board (see General Obligations Law, § 15-108). Appellants contend that the court's charge to the jury when submit-

ting the question of apportionment was inadequate because it failed to marshal the facts or the contentions of the parties and the legal principles involved (see *Green v Downs,* 27 NY2d 205, 208; *Zipay v Benson,* 47 AD2d 233, 235). These errors, however, are not grounds for reversal. There were only two suggested theories of liability against the school board, its failure to establish a safe bus stop (see *Pratt v Robinson,* 39 NY2d 554, 560, *supra; Gleich v Volpe,* 32 NY2d 517, *supra),* or its failure to exercise reasonable care in instructing the bus operator, Kirk. There was no proof that the bus stop on Wilson Road was unsafe and there was no basis for liability against the board of education for locating it there. As for the second theory, assuming that such a duty of instruction exists, it is clear that Kirk knew the board's rules and knew his responsibility to cross the children in front of the bus at Wilson Road. He claimed that he had done so and no failure by the board in this respect could result in liability (see *Aridas v Caserta,* 41 NY2d 1059). Based upon the evidence, there was no basis for contribution or apportionment and the errors in the court's charge are not grounds for reversal.

■ Finally, appellants contend that the verdict is excessive. The infant plaintiff was 12 years old at the time of the accident, a junior high school student of average intelligence and prospects. She sustained multiple injuries in the accident, the most serious a fractured skull resulting in permanent brain damage. She is mentally retarded, restricted in her ability to see and hear and she has some spasticity in her limbs. After the accident she returned to school and she has advanced through classes for the mentally retarded to the high school level. She remains educated at the third grade level, however, with I.Q. scores between 57 and 63. Her future both socially and occupationally is extremely limited. Notwithstanding the severity of her damages, we believe the verdict for the infant plaintiff for pain and suffering and permanent disability is excessive and should be reduced to $750,000. The verdict in the mother's derivative cause of action is supported by the evidence.

Plaintiff's judgment against appellants and the order denying appellants' motion to set aside the verdicts should be reversed on the grounds of excessiveness and a new trial granted unless the plaintiffs agree in writing within 20 days of the entry of the order herein to modify the judgment by reducing the verdict in the infant's cause of action to the sum

of $750,000. In the event that plaintiffs so stipulate, the judgment, as modified, is affirmed. The judgment of no cause for action in favor of defendant Gagliardi Brothers Service and defendant Camillo Gagliardi should be affirmed.

HANCOCK, JR., J. (dissenting). · I must dissent. The statutory liability imposed on the school bus driver by subdivision (b) of section 1174 of the Vehicle and Traffic Law ("Overtaking and passing school bus") in my opinion is limited to injuries sustained by pupils from motor vehicles traveling on the highway on which the bus is stopped. (See *Pratt v Robinson,* 39 NY2d 554, 561; *Van Gaasbeck v Webatuck Cent. School Dist. No. 1,* 21 NY2d 239.)

The liability for a violation of subdivision (b) of section 1174 is absolute *(Van Gaasbeck v Webatuck Cent. School Dist. No. 1, supra,* pp 244-245). It did not exist at common law. Where "a statute creates a liability where otherwise none would exist, or increases a common-law liability, it will be strictly construed." (Sutherland, Statutory Constr., § 371, quoted in *Leppard v O'Brien,* 225 App Div 162, 164, affd 252 NY 563; see *Berger v City of New York,* 260 App Div 402, 404, affd 285 NY 723; *Miller v Town of Irondequoit,* 243 App Div 240, 242, affd 268 NY 578; cf. *Lopes v Rostad,* 45 NY2d 617.) The majority do not follow this established rule.

To hold, as the majority must, that the Legislature intended that there should be absolute liability under subdivision (b) of section 1174 of the Vehicle and Traffic Law in the factual situation presented here is not consistent with the design or purpose of the statute. Section 1174, as its title suggests, was enacted to protect pupils alighting from a school bus from the hazard of traffic "overtaking and passing the school bus". The protection is achieved through the combined effect of subdivisions (a) and (b) operating simultaneously on the traffic and on the school bus driver to the end that pupils can cross safely while traffic in each direction is halted.[1] Under section 1174

---

1. That the protection afforded by the statute was intended to be supplied by the combined operation of subdivision (a) of section 1174 on the drivers of vehicles on the highway and subdivision (b) of section 1174 on the bus driver is borne out by the description of the statute (7 Legis Doc, 1954, No. 36, p 98): "Subsection (a) of [section 1174] prohibits the driver of any vehicle from passing a school bus in either direction when such bus has stopped to take on or discharge any school child or children outside of a business or residence district. The driver under such circumstances is required to stop and to remain standing until the school bus begins to move or the bus driver indicates that he shall proceed. Subsection (b) places upon the school bus driver the duty of instructing the children that, when it is necessary for them to

the bus (marked and equipped in the manner prescribed by subdivision 20 of section 375 of the Vehicle and Traffic Law), when stopped in the highway with its lights flashing, performs the function of a red traffic signal light. Traffic, "upon meeting or overtaking from either direction any school bus" is commanded by subdivision (a) of section 1174 to stop so long as the bus is stationary and the red lights are flashing. The bus driver, under subdivision (b) of section 1174, is directed to instruct the pupils to cross in front of the bus while the traffic is stopped and it is safe for them to do so. It is reasonable that a bus driver who directs pupils to cross but neglects to turn on the flashing signal or otherwise violates subdivision (b) of section 1174 should be absolutely liable for injuries resulting from overtaking or meeting traffic coming from behind or in front of the bus; for by failing to actuate the flashing lights or by driving away before seeing the pupils safely across the highway the driver has deprived the pupils of the protection the statute is designed to give them and has thereby placed them in a position of greater danger. The same rationale for imposing absolute liability is not present when injuries result from traffic moving at right angles to the bus; for then the driver has no control of the traffic and his violation of the statute has not increased the risk by removing a protection that the pupils otherwise would have enjoyed.

The majority agree that "the highway" that the bus driver must instruct the pupils to cross under subdivision (b) of section 1174 is that highway upon which the bus has stopped and on which there is meeting and overtaking traffic (Vehicle and Traffic Law, § 1174, subd [a])—in this case, Wilson Road. Indeed, the Court of Appeals in *Pratt v Robinson* (39 NY2d 554, *supra)* has emphasized that the bus driver's duty is "to

proceed across a street, they shall do so in front of, rather than behind the bus. This requirement enables the driver to better protect the children while they cross the highway. An additional safeguard is provided by requiring the driver to keep the red signal lights flashing thus indicating to drivers of other vehicles on the highway that they must remain motionless. School busses, to avail their charges of the protection afforded by the statute, must be marked and equipped as required in subsection (a) of [section 375, subd 20]" and further: "When busses which have complied with the statutory requirements are stopped so that children may get on and off, vehicles are required to remain stationary so as not to endanger any child or children who may enter upon the roadway. Should any of the children have to cross to the opposite side of the roadway, the driver is required to instruct them to do so in front of the bus. From the vantage point of his seat, he can watch over their crossing and at the same time, with the aid of rear view mirrors, watch the roadway in both directions for any vehicle which might, in violation of the statute, approach and endanger the children."

see children safely across *the street at which the bus is stopped". (Pratt v Robinson, supra,* p 561; emphasis in original.) To the obvious argument that liability under the statute should, therefore, be limited to cases where the pupil is crossing "the street at which the bus is stopped" the majority answer that the plaintiff, because she was crossing Route 31 diagonally to the northeast, can be said to have also been crossing Wilson Road, provided one assumes that the curb lines of Wilson Road are extended into and across Route 31. Regardless of whether the place of injury can technically be considered to be in Wilson Road as well as in Route 31, such construction ignores the basic point that it is the danger from overtaking and meeting traffic and not crossing traffic that the statute is designed to guard against.

The majority holding thus construes subdivision (b) of section 1174 of the Vehicle and Traffic Law alone and without regard to the concomitant applicability of subdivision (a) of section 1174 as imposing absolute liability on the bus driver. Such interpretation, in my view, is contrary to the accepted canon of statutory construction that all parts of a statute must be read together and harmonized to determine its fair meaning. (See McKinney's Cons Laws of NY, Book 1, Statutes, § 97.) It is also an extension of the liability created by section 1174 to a situation that falls without the intended scope of the statute, i.e., where the stopped and lighted bus can have no effect on traffic and where neither the bus driver nor the pupils have the protection of subdivision (a) of section 1174. This, in my opinion, is a most liberal reading of section 1174 and not the strict construction required by the established rule. (See *Berger v City of New York,* 260 App Div 402, *supra; Miller v Town of Irondequoit,* 243 App Div 240, *supra; Leppard v O'Brien,* 225 App Div 162, *supra.)*

Assuming for the sake of argument that the Legislature intended that section 1174 of the Vehicle and Traffic Law be applied, in a proper case, to traffic on crossing streets, it was error, in my opinion, to apply the section here, since a violation could not have been a proximate cause of the accident. (See *Ventricelli v Kinney System Rent A Car,* 45 NY2d 950; *Torres v City of New York,* 44 NY2d 976; *Mace v Ryder Truck Rental,* 43 NY2d 814; *Sheehan v City of New York,* 40 NY2d 496.) The dangerous conditions which caused plaintiff's injuries and with which she was confronted when she alighted from the school bus were those resulting from the traffic

proceeding east and west on Route 31. Nothing that the bus driver did or did not do in fulfilling his responsibilities to plaintiff under subdivision (b) of section 1174 of the Vehicle and Traffic Law in discharging her at Wilson Road could have increased that danger.[2] Whether, as the majority contend, plaintiff, because of the bus driver's failure to see her safely across Wilson Road was forced to cross two highways without the protection of the stopped bus instead of one,[3] is, to me, of no moment because plaintiff would in any event have been confronted with the dangerous crossing of Route 31 that led to her injury. I find no evidence in the record to support the argument that crossing Route 31 from the southeast corner instead of from the southwest corner could have lessened that risk. Thus, it cannot be said that "the negligence complained of must have caused the occurrence of the accident from which the injuries flow" *(Rivera v City of New York,* 11 NY2d 856, 857). To constitute proximate cause it must appear that the plaintiff's injury was "the natural consequence of the alleged negligent act" *(O'Neill v City of Port Jervis,* 253 NY 423, 433; see *Sheehan v City of New York, supra,* p 503) and also that the consequences of that act were reasonably foreseeable (see *Kulaga v State of New York,* 37 AD2d 58, 64-65 [concurring opn, WITMER, J.], affd 31 NY2d 756).

For the same reasons I must conclude that any claimed

---

**2.** See Prosser, Law of Torts (4th ed, § 44, p 275) stating: "Even though the intervening cause may be regarded as foreseeable, the defendant is not liable unless his conduct has created or increased an unreasonable risk of harm through its intervention. A wind might be expected to blow at any time, and it might damage the plaintiff in a hundred different ways, but the defendant is not responsible for it unless he has set a fire or done some other act which increases the foreseeable danger that the wind will do harm. There may be an appreciable danger that the plaintiff will be struck by lightning, or by an automobile in the street, or a mail sack thrown from a train, or that a kerosene lamp will explode in his face, *but there is no liability unless what the defendant has done has increased the risk."* (Emphasis added.)

**3.** The argument that plaintiff was made to cross two streets is, of course, based on the assumption that in crossing Route 31 she was veering somewhat to the east and was therefore "crossing" the hypothetical extension of Wilson Road. That plaintiff chose to traverse Route 31 in a northeasterly direction was something over which the bus driver had no control. It cannot be said that the necessity of doing so (and thus of "crossing" two highways) was the result of the driver's failure to follow subdivision (b) of section 1174. In any event, from the standpoint of the number of crossings entailed, arguably the "best" route available to plaintiff was straight across Route 31 from the southwest (not southeast) corner of the intersection and then east along Route 31 to her home. This would have required only one highway crossing—not two. It appears that Wilson Road ends at Route 31 and that Sandpit Road is a narrow "third-rate" road which enters Route 31 from the north approximately across from Wilson Road.

failure to live up to a common-law duty to discharge the pupils safely on the west side of Wilson Road could not have been the proximate cause of the accident. The question of proximate cause should have been decided as a matter of law and the complaint dismissed *(Rivera v City of New York, supra)*.

CARDAMONE, J. P. and CALLAHAN, J., concur with SIMONS, J.; HANCOCK, JR., and WITMER, JJ., dissent and vote to reverse the judgment and dismiss complaint in an opinion by HANCOCK, JR., J.

Judgment and order, in Appeal No. 1, reversed on the facts and a new trial granted, with costs to appellants to abide the event, unless the plaintiffs shall, within 20 days, stipulate to reduce the verdict in the infant's cause of action to the sum of $750,000 as of the date of the rendition thereof, in which event the judgment is modified accordingly and, as modified, is, together with the order, affirmed, without costs of this appeal to any party.

Judgment, in Appeal No. 2, unanimously affirmed, without costs.