[620 NYS2d 562]

GLORIA BRUCE, Individually and as Parent and Natural Guardian of JENNIFER BRUCE, an Infant, et al., Appellants, v ROSLYN R. HASBROUK, Defendant, and ELLENVILLE CENTRAL SCHOOL DISTRICT No. 2 et al., Respondents.

Third Department, December 22, 1994

### APPEARANCES OF COUNSEL

*Sichol & Hicks, P. C.,* Suffern *(William R. Sichol, Jr.,* of counsel), for appellants.

*Cook, Tucker, Netter & Cloonan, P. C.,* Kingston *(Robert D. Cook* of counsel), for Ellenville Central School District No. 2, respondent.

*Kevin Moss,* Altamont *(Michael J. Hutter* of counsel), for Shawanga Bus Company and another, respondents.

### OPINION OF THE COURT

WHITE, J.

When Lisa Bruce boarded her school bus on June 15, 1990, at the designated stop located at Tom's Taxidermy on the east side of U.S. Route 209 in the Town of Wawarsing, Ulster County, she told the school bus driver, defendant Lisa Mulford, that her sister Jennifer, then age nine, was not ready

and was going to catch the bus at an undesignated stop on the west side of Route 209 across from Tom's Taxidermy. After Lisa boarded the bus, Mulford continued northward on Route 209 for one-half mile, then turned around and proceeded south. As she did so, she noticed that cars were backed up on the roadway. She soon learned that there had been an accident involving Jennifer who, while attempting to cross Route 209, was struck by a northbound vehicle operated by defendant Roslyn R. Hasbrouk.

Thereafter, plaintiffs commenced this personal injury action against defendant Ellenville Central School District No. 2 (hereinafter the School District), Mulford and defendant Shawanga Bus Company (hereinafter collectively referred to as Shawanga), the assignee of a contract to provide school bus transportation for the School District's students. Following discovery, the School District and Shawanga moved for summary judgment. Supreme Court granted the motions, finding, in essence, that these defendants did not breach the duty of care they owed to Jennifer. Plaintiffs appeal.

The seminal case defining the extent of a school district's duty to the students it transports on its school buses is *Pratt v Robinson* (39 NY2d 554). The duty established therein is that a school district must transport its students in a careful and prudent manner, which duty continues until the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection *(supra,* at 561).

Despite our observation in *Di Cerbo v Raab* (132 AD2d 763) that a school district's duty does not begin and end when a student approaches and leaves the assigned bus stop, a school district's duty has not been extended to situations where the student was not in its physical custody. This is illustrated by *Fornaro v Kerry* (139 AD2d 561), where it was held that a school district did not owe a duty to prevent older students from mingling with younger ones at the same bus stop *(see also, Bodaness v Staten Is. Aid,* 170 AD2d 637). Likewise, a duty was not found when a student, contrary to school rules, left the school bus with the driver's knowledge and was subsequently injured while riding in a fellow student's car *(see, Bushnell v Berne-Knox-Westerlo School Dist.,* Sup Ct, Albany County, Dec. 17, 1985, Hughes, J., *affd* 125 AD2d 859, *lv denied* 69 NY2d 609; *see also, Hurlburt v Noxon,* 149 Misc 2d 374).

As it is undisputed that Jennifer was never within the School District's physical custody nor within its orbit of authority, we find that it did not breach the duty of care it owed Jennifer particularly since it appears that the School District was unaware that students were boarding the bus at this undesignated stop.

When a school district designates a particular location as a bus stop it performs a governmental function *(see, Miller v State of New York,* 62 NY2d 506, 512). It is firmly established that public entities are immune from tort claims arising out of the performance of their governmental functions unless the plaintiff establishes a special relationship with the public entity *(see, Bonner v City of New York,* 73 NY2d 930, 932; *Brady v Board of Educ.,* 197 AD2d 655; *Perry v Board of Educ.,* 189 AD2d 939). Plaintiffs have not established such a relationship as they have not shown that the School District affirmatively took some action on their behalf which it communicated to them and upon which they relied to their detriment *(see, Cuffy v City of New York,* 69 NY2d 255, 260). For the same reason, plaintiffs' argument that the School District is liable in light of its failure to promulgate or enforce no-cross safety rules with respect to Route 209 lacks merit. Thus, we conclude that there is no basis to impose liability upon the School District for its alleged negligence in performing a governmental function. In short, a balance must be maintained between providing a remedy to every injured party and extending exposure to tort liability almost without limitation *(see, De Angelis v Lutheran Med. Ctr.,* 58 NY2d 1053).

■ Turning to Shawanga, the record shows that for two years prior to the accident in issue, it was common practice for it to pick up students who had crossed Route 209 after missing the bus at the designated stop in front of Tom's Taxidermy. Shawanga contends that this conduct did not breach the duty of reasonable care it owed Jennifer *(see, Nichter v Hartley,* 192 AD2d 842; *Sewar v Gagliardi Bros. Serv.,* 69 AD2d 281, *affd* 51 NY2d 752). We disagree since a trier of fact could find that a reasonably prudent school bus operator would not have engaged in such practice because of the obvious risk it presented to children attempting to cross Route 209, a heavily traveled highway with a 55-mile-per-hour speed limit *(see, Palsgraf v Long Is. R. R. Co.,* 248 NY 339). Accordingly, Supreme Court erred in granting its motion for summary judgment.

· The fact that liability may be imposed upon Shawanga does not render the School District vicariously liable since it is undisputed that Shawanga was an independent contractor *(see, Chainani v Board of Educ.,* 201 AD2d 693).

CASEY, J. (concurring in part and dissenting in part). I agree with the majority's analysis regarding the liability of Shawanga and the School District's vicarious liability for the acts of Shawanga. I disagree, however, with the majority's conclusion that the School District did not owe a duty of care to the injured student.

The majority's limitation of the duty owed by a school district when it provides transportation to its students was expressly rejected by this Court in *Di Cerbo v Raab* (132 AD2d 763). As explained by former Presiding Justice Mahoney *(supra,* at 764), the relationship between a school district and the students to whom it provides transportation, together with the risks reasonably to be perceived, give rise to a duty of care to act in a reasonably prudent manner. The issue, therefore, is not whether the School District *owed* a duty, but whether the School District *breached* the duty to act in a reasonably prudent manner. The majority offers no convincing argument for its failure to follow the precedent established by this Court in the *Di Cerbo* case *(see, People v Hobson,* 39 NY2d 479, 487-491).

The case of *Pratt v Robinson* (39 NY2d 554) does not require a different conclusion. In the *Pratt* case, the student was injured while crossing an intersection after she had walked several blocks from the regular bus stop where she had been discharged from the school bus at the end of the school day. The Court of Appeals held that in these circumstances the school district had fulfilled its duty to the student by discharging her at a concededly safe and scheduled stop *(supra,* at 560). The Court recognized, however, that because the school district undertook to transport students it must do so in a careful and prudent manner, and that liability can be imposed for injuries which occur after students have technically been discharged from the bus *(supra,* at 561). Accordingly, actual physical custody and control of the student does not necessarily define the extent of the school district's duty. Nor does the distinction between "governmental" and "proprietary" functions define the scope of a school district's duty when it provides transportation to its students *(supra,* at 563). Inasmuch as the injury which is the subject of this action arose

out of the School District's performance of a particular bus service actually provided to the injured student, rather than the School District's failure to provide an additional service, it cannot be said that the School District owed no duty to the injured student *(see, supra,* at 564).

In this case, the School District initially designated a safe, regular stop for its students to board the school bus which, standing alone, would be sufficient to establish the absence of any breach of duty *(see, Di Cerbo v Raab, supra,* at 765). In contrast to the *Di Cerbo* case, however, there is evidence in this record that the School District knew it was unsafe for students to cross Route 209 where the accident happened. There is also evidence that the School District knew or should have known that its students regularly crossed Route 209 to board the school bus, but did nothing to protect its students from the obvious risk of harm in an unsafe practice that had occurred more than once a week for several years.

According to the affidavits of several students, it was a common practice for the bus to stop on its return trip along Route 209 and pick up students who had crossed the road after missing the bus at the designated stop. As recognized by the majority, a trier of fact could find that a reasonably prudent school bus operator would not have engaged in such a practice because of the obvious risk of harm to students when they cross a heavily traveled highway which has a 55-mile-per-hour speed limit. The mere fact that the School District contracted with Shawanga to provide student transportation did not, however, relieve the School District of its responsibility for the careful and prudent transportation of its students.

The School District's duty to act in a reasonably prudent manner concerning the location of the bus stop was independent of any duty owed to the injured student by Shawanga *(compare, Sewar v Gagliardi Bros. Serv.,* 69 AD2d 281, 290, *affd* 51 NY2d 752, *with Chainani v Board of Educ.,* 201 AD2d 693). This is not a case where a bus company made an unforeseeable departure from the school district's well-defined regulations regarding the location of the bus stop. Nor is this a case where the injured student made an unexpected attempt to use an alternate bus stop. There is evidence in the record that for at least two years the bus had stopped two or three times a week to pick up students who had crossed Route 209 from the designated stop. School District personnel conceded that the School District was responsible for establishing bus routes and designating bus stops, with student safety a para-

mount concern. It is also conceded that the School District considered it unsafe for students to cross Route 209, having designated the highway a "no cross" road, and that School District personnel regularly inspected the bus routes and made spot checks. Nevertheless, there is evidence in the record that the School District did not advise Shawanga of its "no cross" designation of Route 209 and did not provide any policy regarding the action to be taken by Shawanga when students crossed the road to wait for the bus on the opposite side from the designated stop.

In these circumstances, the School District's claim that it was unaware of an unsafe practice that had been occurring for at least two years on a weekly basis on one of the bus routes for which the School District bore the ultimate responsibility of providing a safe place for its students to board the bus is insufficient to entitle the School District to summary judgment. In effect, Shawanga's practice created an alternative bus stop which was unsafe, one that was regularly used by students on a weekly basis for at least two years before the injured student's accident. Based upon the relationship between the School District and the students to whom it provides transportation, together with the risks inherent in a bus stop which permits students to cross a heavily traveled highway with a 55-mile-per-hour speed limit, it is my view that the School District owed the injured student a duty of care concerning the location of the bus stop, independent of any duty owed by Shawanga, which a trier of fact could find was breached by the School District. Accordingly, the School District's motion for summary judgment should have been denied.

CARDONA, P. J., and YESAWICH JR., J., concur with WHITE, J.; CASEY, J., concurs in part and dissents in part in a separate opinion.

Ordered that the order and judgment are modified, on the law, without costs, by reversing so much thereof as granted the cross motion by defendants Shawanga Bus Company and Lisa Mulford; said cross motion denied; and, as so modified, affirmed.