■ JULIO RIOS et al., Respondents-Appellants, v CITY OF NEW YORK et al., Respondents, and NEW YORK CITY TRANSIT AUTHORITY, Appellant-Respondent. [822 NYS2d 638]—

In an action to recover damages for personal injuries, etc., the defendant New York City Transit Authority appeals, as limited by its brief, from so much of a judgment of the Supreme Court, Richmond County (Minardo, J.), dated October 6, 2004, as, upon a jury verdict on the issue of liability finding it 50% at fault in the happening of the accident, the defendant City of New York 20% at fault, and the plaintiff Julio Rios 30% at fault, upon the granting of the motion of the defendant City of New York to set aside the verdict insofar as against it on the issue of liability and for judgment as a matter of law, upon the court's reallocation of the defendant City of New York's 20% apportionment of fault to the defendant New York City Transit Authority, and upon the denial of its motion to set aside the jury verdict insofar as against it on the issue of liability and for judgment as a matter of law, is in favor of the plaintiffs and against it, and the plaintiffs cross-appeal from so much of the same judgment as, upon granting the motion of the defendant City of New York to set aside the jury verdict insofar as against it on the issue of liability and for judgment as a matter of law, is in favor of that defendant and against it.

Ordered that the judgment is reversed insofar as appealed from, on the law, the motion of the defendant New York City Transit Authority to set aside the verdict insofar as against it is granted, and the complaint is dismissed insofar as asserted against that defendant; and it is further,

Ordered that the judgment is affirmed insofar as cross-appealed from, and it is further,

Ordered that one bill of costs is awarded to the defendants appearing separately and filing separate briefs.

On July 3, 1995 the plaintiff Julio Rios alighted from the S53 bus operated by the defendant New York City Transit Authority (hereafter the Transit Authority), which had stopped at a designated bus stop at Lily Pond Road in Staten Island. Mr. Rios' intention was to cross Lily Pond Road to transfer to the S51 bus, which had a designated stop directly across the street. These bus stops were located underneath the roadway overpass of the Staten Island Expressway. Lily Pond Road was a six-lane highway with three lanes of traffic in each direction.

In the immediate area of the Lily Pond Road bus stop, there was no crosswalk or traffic control devices. In order to reach an area where one could cross Lily Pond Road at a crosswalk or with the assistance of a traffic control device and transfer to the S51 bus, one could head north or south along Lily Pond Road and cross a single-lane entrance or exit ramp which was unregulated by a traffic control device. Alternatively, one could remain on the S53 bus for one more stop and alight at the McLean Avenue stop.

However, Mr. Rios proceeded to cross Lily Pond Road upon alighting from the S53 bus at the Lily Pond Road stop. As he neared the center of the roadway, he was struck by a motorcycle operated by the defendant Ralph Allocca and suffered numerous injuries.

A common carrier owes a duty to an alighting passenger to stop at a place where the passenger may safely disembark and leave the area (*see e.g. Miller v Fernan*, 73 NY2d 844, 846 [1988]). Thus, a bus company may be held liable for a passenger's injuries where such passenger is struck by a car upon crossing the street after having alighted from the bus at an unscheduled stop (*see Miller v Fernan, supra*), or where a defect in the condition of the ground in the immediate vicinity where a passenger alighted from the bus caused the passenger to trip and fall (*see Dunham v City of New York*, 262 AD2d 444 [1999]; *Blye v Manhattan & Bronx Surface Tr. Operating Auth.*, 124 AD2d 106 [1987], *affd* 72 NY2d 888 [1988]; *Bundy v City of New York*, 18 AD2d 799 [1963]).

However, once a passenger safely disembarks from a bus at a designated bus stop, the bus company's duty to the passenger has been completed, provided that the bus company exercises no control over the designation of the bus stop (*see Hanley v East Moriches Union Free School Dist. II*, 275 AD2d 389, 391

[2000]; *Rodriguez v Manhattan & Bronx Surface Tr. Operating Auth.*, 117 AD2d 541, 542 [1986]; *Sewar v Gagliardi Bros. Serv.*, 69 AD2d 281, 286 [1979]; *Squitire v Middle Country Cent. School Dist.*, 4 Misc 3d 1025[A], 2004 NY Slip Op 51044[U] [2004]). Here, the undisputed evidence at trial indicated that the bus stop at issue was a designated stop, and that the New York City Department of Transportation, not the Transit Authority, retained the ultimate authority to designate and eliminate bus stops, including the one at issue. As such, once Mr. Rios safely disembarked at the designated bus stop, the Transit Authority's duty to him was complete. Accordingly, the Supreme Court erred in denying the Transit Authority's motion to set aside the verdict insofar as against it and for judgment as a matter of law.

Contrary to the plaintiffs' contentions, the Supreme Court properly granted the motion of the defendant City of New York to set aside the verdict on the issue of liability insofar as against it and for judgment as a matter of law. Liability cannot attach to a municipality which controls street lighting conditions where such lighting conditions did not contribute to or cause a dangerous condition which was a proximate cause of the subject accident (*see e.g. Thompson v City of New York*, 78 NY2d 682 [1991]). The mere fact that a street light burned out and that the street was dark is not sufficient to render a street dangerous and is not sufficient to establish a cause of action sounding in negligence (*see Thompson v City of New York, supra*; *Cracas v Zisko*, 204 AD2d 382 [1994]). In the instant case, the plaintiffs proceeded against the City solely under a theory of negligent failure to maintain the lights under the overpass. The defendant Allocca testified that there were numerous light fixtures installed on the ceiling surface of the overpass in a checkerboard pattern, and that many of these light fixtures were often not working and it was generally very dark in the underpass. However, there was no testimony indicating that the lack of lighting in any way contributed to the accident. Accordingly, the City's motion to set aside the verdict on the issue of liability insofar as against it and for judgment as a matter of law was properly granted (*see Thompson v City of New York, supra*; *Cracas v Zisko, supra*; *Michetti v City of New York*, 184 AD2d 263 [1992]).

In light of our determination, the remaining contentions of the Transit Authority need not be reached. Adams, J.P., Krausman, Fisher and Dillon, JJ., concur.