Fuchsberg, J.
Seven-year-old Lorraine Pratt, who was on her way home from school, sustained substantial injuries when she was struck by a truck while crossing Plymouth Avenue South at Columbia Avenue in the City of Rochester. She had alighted without misadventure from an eastbound school bus at its regular bus stop on the sidewalk of Columbia Avenue at its intersection with Seward Street. Before reaching the point of the accident, as she usually did she had then walked east along the Columbia Avenue sidewalk in the company of her 9- and 13-year-old brothers for a distance of three short city blocks, during which, under the eyes of her siblings, she had crossed two intersecting streets.
The Plymouth Avenue intersection, where Lorraine was struck is a heavily trafficked one. From there she still had about two more blocks to go before reaching the Pratt family home on Edith Street. Her two brothers, as her parents had instructed them to do, would usually take her by the hand on crossing the intersection. On this occasion, however, the boys proceeded to cross without observing whether she was still with them and, once they were on the other side, having noticed for the first time that she had become separated from *557 them and had lagged behind, they beckoned to her to cross over too. It was while she was doing so that she was hit.
Shortly after the truck injured the plaintiff, and prior to trial, her claim against the driver and owner of the vehicle was settled for the full amount of its insurance coverage, which was only in the statutory minimum limit of $10,000. That is where the case before us begins, the plaintiff and her parents having then proceeded with this suit against the city, the school district and the bus company. In effect, the theory of their action is that the location of the school bus stop was negligently planned. They do not assert that the place chosen for the actual bus stop, Columbia Avenue and Seward Street, is unsafe in any way, but only that the stop should have been located, instead, at a point which would have obviated the need for the child to cross Plymouth Avenue South three blocks later on foot.
In due course, the case came up for trial before a jury. However, at the end of the plaintiffs’ proof, the Justice who presided dismissed the complaint against the city and the bus company for failure to make out a prima facie case. At the end of all of the proof, he dismissed the complaint against the school district for the same reason. The Appellate Division, with two Justices dissenting, affirmed the order and judgment entered on the dismissals. Because of the division in the court below, this appeal is now before us as a matter of right pursuant to CPLR 5601 (subd [a], par [i]).
The bus route here had been established by the school district as an accommodation to the children whom it served. Its use was not compulsory. It came into existence when the school district instituted an enrollment plan, under which children could, at the option of their parents, attend schools other than the neighborhood ones closest to them. Obviously, the busing program was intended to make participation in the plan, for those who wished to avail themselves of it, easier.
Plaintiffs’ parents having availed themselves of the enrollment plan by transferring Lorraine from school No. 2, which she had attended the year before, to school No. 21, which was farther from their home, also elected to take advantage of the busing program with the full knowledge of the time schedule and location of the bus stops, including the one here, the closest to them. They also knew that no arrangements were offered for transporting the children from their homes to the bus stops and vice versa. It was up to the parents and children *558 to handle that on their own, and they could do so in any one of the many possible ways that suited them.
For instance, if the parents wished, they could have their children walk the distance, either alone or in custody of others. They could accompany the children personally. They could, if they so desired, transport the children by automobile, whether through the kind of pooling arrangement which parents commonly work out or individually, the latter method being the one that the plaintiff’s father used to get her to the bus stop in the morning. Or they could, of course, bypass the bus entirely and arrange for the children to get to the school directly. With respect to all such alternatives, the child and the parents were in precisely the same position as if the school itself, rather than the bus stop, was located at the corner of Columbia and Seward and no busing was provided at all.
Accommodation of the plaintiffs’ desire for a bus stop closer to their home would have required the school district to reroute its bus, which normally proceeded along a street named Bronson Avenue, in order to reach its next stop, which was a goodly distance from the plaintiffs’ home. As it happens, owing to the temporary closure of Bronson Avenue to traffic at the time of this accident, the bus in fact followed a detour which, after it left its scheduled stop at Columbia and Seward, took it east on Columbia and then north on Plymouth, exactly parallel to the child’s walking route to the point where she would turn down Edith Street away from Plymouth. It also happens that all eight children who during this particular term of school used the bus stop at Columbia Avenue and Seward Street lived east of Plymouth Avenue. We do not believe these coincidences, which, incidentally, do not form the basis of plaintiffs’ claim, affect the situation.
Moreover, we do observe that, as a practical matter, to have relocated plaintiffs’ bus stop along the route of the detour on Plymouth Avenue, especially on a temporary basis, could have wrought havoc with the entire busing program, by altering the scheduled time of all subsequent stops on very short notice to parents or others in the habit of meeting the bus so that they could, in turn, rearrange their schedules, and by requiring the district to reassess such other factors as costs, the terms of the contract with the bus company, the safety of the new stop, and the possible obstruction of traffic caused by locating the stop on a far busier roadway. And, incidentally, a *559 change would not have obviated the need to cross to take the bus in the morning when it would be headed to rather than from the school.
In any event, the gravamen of the issue before us is whether it was negligent for the school district to have located its bus stop so that the plaintiff child was required to cross a dangerous intersection blocks away while en route home.
Negligence of the sort here alleged can only be found if there existed a duty on the part of the school district to transport the plaintiff to a location from which she could walk home without crossing any dangerous streets on the way. Such a duty could arise in a number of ways, each of which we shall examine.
The first of these would be the imposition of such a duty by the Legislature. The relevant State statute, pursuant to which local school districts are authorized to conduct busing programs, is section 3635 of the Education Law. That statute imposes no duty on a city school district to bus any child. It specifies only that, where such busing is provided, it must be made available to all eligible children "equally”. This conditional mandate has been interpreted to mean that all children who live the same distance from the school must be offered busing services; it does not refer to any obligation to consider the relative hazards in the paths of different children (see 12 Ed Dept Rep 148, 161, 224; 10 Ed Dept Rep 49; 8 Ed Dept Rep 213; Matter of Studley v Allen, 24 AD2d 678; see, also, Ossant v Millard, 72 Misc 2d 384).
As the court in the Studley case put it (p 678), "the legislative yardstick is distance, which is, objectively, readily ascertainable, and not hazard which involves a myriad of factors”. As that court further noted, the statutory language indicates that "the Legislature 'has not completely transferred to school districts the duty of transporting every pupil’ ” (id., citing the unpublished opinion at nisi prius). Finally, we note that subdivision 1 of section 3635 specifically states that "Nothing contained in this subdivision * * * shall be deemed to require a school district (i) to furnish transportation to a child directly to or from his home”. We conclude that the statute itself furnishes no basis upon which to posit a duty on the part of the school district to bus the plaintiff closer to her home solely in order to avoid a hazard in the nature of a heavily traveled crossway located several blocks away from the designated bus stop.
*560 Nor does the common-law custodial duty of a school toward its pupils supply any basis for liability here. It is clear that a school district does have a special relationship to its students, as that term is used in the negligence context, a relationship analogous to that between carriers and their passengers or innkeepers and their guests (Restatement, Torts 2d, § 315, subd [b]; § 320). This special duty owed to students requires a school to act when a child, while in its charge, is threatened by the negligence of a third party, and it must make reasonable efforts to anticipate such threats (§ 320). If, then, the custodial duty applied to the case before us, the school might be liable for failing to foresee that plaintiff might be injured crossing Plymouth Avenue, and for failing to prevent that potential harm.
The duty owed by a school to its students, however, stems from the fact of its physical custody over them. As the Restatement puts it, by taking custody of the child, the school has "deprived [the child] of the protection of his parents or guardian. Therefore, the actor who takes custody of * * * a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him” (Restatement, Torts 2d, § 320, comment b). The school’s duty is thus coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child’s protection, the school’s custodial duty also ceases (see Seitz, Legal Responsibility Under Tort Law of School Districts as Regards Negligent Conduct Towards Pupils, 15 Hastings LJ 495; Proehl, Tort Liability of Teachers, 12 Vand L Rev 723; Note, Teachers’ Liability for Pupils’ Injuries —Duty of Supervision, 19 Me L Rev 111).
In the present case, when the school district undertook to offer the busing it did, it extended its control over its pupils from the school door to the bus stop only. At that point, the children having been set down in a safe spot, and nothing untoward having occurred in the course of their disembarkation, its transportation program no longer substituted for parental control and, thus, it bore no further duty to the child on the basis of its special role as custodian. Where a child is discharged from the bus at a concededly safe and scheduled stop, and is then injured several blocks away from the stop, no interference with parental control could be found, any more *561 than it could be found if no busing were provided at all and the child had been hurt while walking home from a neighborhood school itself located at Columbia Avenue and Seward Street.
There remains one further and major source of liability to be considered. The school district did undertake to transport students and must therefore perform so much as it had undertaken in a careful and prudent manner. Under certain circumstances, school districts in our own State and in other States have been held liable on this theory when children were injured, even after they had technically been discharged from the bus (see McDonald v Central School Dist. No. 3, 179 Misc 333, affd 264 App Div 943, affd 289 NY 800; Van Gaasbeck v Webatuck Cent. School Dist. No. 1, 21 NY2d 239; Gleich v Volpe, 32 NY2d 517; Shannon v Central-Gaither Union School Dist., 133 Cal App 124; Gazaway v Nicholson, 61 Ga App 3, affd 190 Ga 345; Tort Liability of Public Schools and Institutions of Higher Learning for Accidents Associated With the Transportation of Students, Ann., 34 ALR3d 1210). Without exception, however, the liability in those cases stemmed either from the fact that the injury occurred during the act of busing itself, broadly construed, or from the violation of a specific statutory duty to see children safely across the street at which the bus is stopped, when their route took them across that street. No such issues have been raised in this case, nor would any apply to the facts here. New York’s Vehicle and Traffic Law (§ 1174, subd [b]), for example, requires school bus drivers to stop, to remain stopped with their lights flashing, and to instruct children in the proper crossing of the street in front of the bus.
As the court below in the McDonald case (179 Misc 333, 336, supra) indicated, these statutory duties have their genesis at least in part in the fact that, when children must cross the street where the bus stops, the bus itself acts as an obstacle to their clear view of oncoming traffic. Interestingly, even such statutorily based liability addresses itself to the students’ transition from the area of transportation undertaken by the school district to the area which was outside its scope. In Van Gaasbeck (supra), we merely added that the breach of that statutory duty gives rise to absolute liability on the part of the school district; we did not in any way suggest any sphere of liability beyond the statutorily mandated one within the area of disembarkation. Gleich v Volpe (supra) also dealt with a *562 bus stop area which was dangerous in and of itself. Indeed, in that case, though there was proof that the bus stop was so located that traffic coming from the rear of the bus would not be visible either to the bus driver or to alighting children and, therefore, it was hazardous to discharge them at that point, we dismissed the complaint against the school district because the other available alternative bus stops presented no lesser danger.
Cases in other States in which liability has been imposed for accidents resulting from the negligence of third parties after a child has left a bus stop area have been rare. Nearly all of them fit within the analysis we have presented in that they too involved either negligence toward a child while it was still in the custody of the school or else failure to perform a specific duty imposed by statute. (See Porter v Bakersfield & Kern Elec. Ry. Co., 36 Cal 2d 582 [bus driver negligent in not looking back often enough to see oncoming cars as alighting children crossed in front of bus]; Shannon v Central-Gaither Union School Dist., 133 Cal App 124, supra [bus parked contrary to statutory requirements while discharging students thereby limiting their view of traffic]; Greene v Mitchell County Bd. of Educ., 237 NC 336 [bus driver negligent in moving bus too quickly after discharging children]; County School Bd. of Orange County v Thomas, 201 Va 608 [bus driver negligent in permitting student to act as "flagman” for it without sufficient instruction in safety]; Machenheimer v Falknor, 144 Wash 27 [driver negligent in permitting student to alight in front of parked car which could and did move, injuring the child].)
The few instances in which other States have imposed liability for injuries occurring at a point distant from the bus stop involved the construction of a particular contractual obligation (see Taylor v Patterson’s Administrator, 272 Ky 415) or else represented instances of straightforward judicial "legislation” of a new duty on the part of school districts rather than the application of even liberal existing legal principles (see Archuleta v Jacobs, 43 NM 425; Slade v New Hanover County Bd. of Educ., 10 NC App 287). We see no basis, either in statutes or common law, for the creation of a school’s duty to protect its students from hazards which may beset them once they are on their way home and outside the control of the school.
The school district here, acting pursuant to State law, *563 defined the scope of its undertaking in the transporting of students. There is absolutely no evidence of any negligence by the bus driver, the bus company, or the school district in the implementation of the undertaking it assumed. There is no allegation that the bus service, to the extent and over the distance that it was provided, was inadequately supervised (see Nicholson v Board of Educ. of City of N. Y., 36 NY2d 798, and cases cited therein). Instead, there is only the district’s refusal to undertake the degree and amount of protection of students which the infant’s parents here desired.
There must be those, we are sure, who would wish the State or its school systems to undertake the provision of busing services tailor-made for the needs of each and every child, just as there are others who believe that too much is already being provided. But such views involve social, political and fiscal considerations of a legislative nature. Thus, when the parents here sought by their complaints to the school administration to gain an extension of the bus routing so as to include a stop east of Plymouth Avenue, they were certainly within their rights as citizens to so petition. However, their petitions having proved unavailing, it is not for us to prescribe an enlargement of public services beyond those which were in fact made available. Our task is to spell out the legal obligations which attach to the undertakings which the school system offered.
It should also be made clear that our holding that liability may not be premised upon a refusal to undertake added areas of service does not depend for its basis on the old, sometimes blurred, distinctions between "governmental”, "ministerial” and "proprietary” functions of municipal governments and their agencies, such as the school district here (see Weiss v Fote, 7 NY2d 579; 2 Harper and James, Torts, § 29.6, p 1619; Prosser, Torts [4th ed], p 979). For, it is not the label "governmental” which protects the planning decisions of a municipal entity; it is simply the fact that the law of negligence does not impose liability upon a government or, for that matter, upon an individual unless there is a breach of a duty.
No matter how desirable its advocates believe it would be, there is no duty on the part of a city school district to decide to adopt a portal-to-portal busing system (see Education Law, § 3635, subd 1, par [i]) or to decide to provide transportation to a point which, with respect to a particular child’s home, will prevent its encountering traffic hazards. Indeed, the existence *564 of such a duty at common law would be inconsistent with the discretionary nature of the functions of planning and allocation of resources placed in the legislative branch of government (cf. Urquhart v City of Ogdensburg, 91 NY 67, 71).
Of course, to the extent, but only to the extent, a school district decides to provide busing, it must operate it with due care. Here, where it did not undertake to, and in fact did not, provide transportation from the bus stop to the home of the plaintiffs, there was no activity for the performance of which it could be held negligent.
Finally, we note that, although the opinions of the courts below were directed solely to the issue of the school district’s liability, the appeals were taken from the dismissal of the bus company and the City of Rochester as well. On this record, we find no grounds for liability on the part of these latter defendants, no additional grounds for liability against them having been urged beyond those we have rejected in this opinion. Their inclusion in the order and judgment of dismissal and its affirmance below was, therefore, correct.
Accordingly, the order of the Appellate Division should be affirmed.