Fuchsberg, J.
(concurring). Posed for resolution on this appeal are questions of duty, negligence and legal causation in the context of a claim for damages against the owner and driver of a school bus, one of whose young charges was so seriously injured when she was struck by another vehicle shortly after her discharge from the bus that the jury evaluated her injuries at $2,000,000. At issue too is the applicability in the circumstances of this case of section 1174 of the Vehicle and Traffic Law, which, inter alia, speaks to safety in the transportation of children by school bus drivers.
In two extensive writings, the Appellate Division divided sharply. So now does this court. The dissenters, adopting so much of the minority opinion below "as concluded that appellants’ actions did not proximately cause the accident”, would dismiss. The plurality’s contrary view is, to say the least, summary. Under these circumstances, I believe it would be useful to outline the rationale for the conclusions I have reached. All the more so because of the confusion which too *754 often accompanies the application of the fundamental but overlapping principles of tort law on which the outcome here depends.
Many of the controlling facts are conceded. Plaintiff Brigette Sewar, then a 12-year-old junior high school student, boarded a school bus owned by defendant Ridge Road Express and driven by defendant Kirk for her regular homebound trip a£ the close of the school day. The route designated by the local board of education took the bus eastbound along Route 31, a heavily trafficked major highway linking the child’s hometown of Lockport with the City of Rochester. As he neared the intersection closest to where the child’s family lived, the driver made a right-hand turn from Route 31 on to Wilson Road, a north-south street on the west side of which was located the official school bus stop at which Brigette and other children were to disembark. When it came to a halt, the front of the bus, which then faced south, was approximately 50 feet from Route 31, its rear no more than 10 feet away.
Other things are in sharp dispute. The b'us driver was to tell the jury that he informed the alighting pupils, who, as he was aware, lived east of Wilson Road and therefore at some point would have to cross that thoroughfare to reach their homes, to do so in front of the bus. He also testified that he did not drive off until they had- complied and that, .while he remained at the stop, the flashing red signals with which this "national school bus chrome”-colored vehicle was required to be equipped were in operation (Vehicle and Traffic Law, § 375, subds 20, 21). The best recollection of the children, on the other hand, was that, having received no such cautions when they stepped out of the bus, they walked along its right side toward the rear, the nearest place from which those who, like Brigette, had to cross Route 31 could navigate it.
It is unquestioned that Brigette had advanced some 10 or 15 feet beyond her classmates when she made a beeline for her home, which lay diagonally across the intersection on Route 31, only a little east of where Wilson Road met the highway. Before she reached the halfway mark, however, she was struck by a motor vehicle owned by Gagliardi Brothers Service and operated by defendant Gamillo Gagliardi heading east on Route 31. At the trial, he claimed that he never saw the school bus or its flashing lights as he approached the Wilson Road intersection. Our own examination of the photo *755 graphic exhibits of the area which were put in evidence during trial reveals that the jury could have found that, had the brightly marked and lit bus still been at the stop, it would have been readily visible to one in Gagliardi’s position as he drove towards his unintended meeting with the child that afternoon.
On this evidence the trial court sent the case to the jury under instructions that it apply principles of common-law negligence to all the defendants and that, as to the bus driver and his employer, it additionally consider his alleged violation of subdivision (b) of section 1174 of the Vehicle and Traffic Law as "some evidence of negligence”. This subdivision requires that "[t]he driver of [a] school bus, when discharging pupils who must cross the highway, shall instruct such pupils to cross in front of the bus and the driver thereof shall keep such school bus halted with red signal lights flashing until such pupils have reached the opposite side of the highway”.[1] The court went on, inter alia, to charge the jury that it was for it to determine whether a violation of any common-law or statutory duties owed by the defendants proximately caused the injuries.[2] In this connection, he also advised the jurors, it was for them to say whether it was reasonably foreseeable that such violations might lead to the child’s being struck and whether plaintiff was free from contributory negligence.[3]
The jury’s deliberations ended in a finding in favor of Brigette and her mother against the bus company and its driver. At the same time, it brought in a no cause as to the Gagliardis, whose defense had been that their vehicle had come upon the child too unexpectedly to escape the impact. A *756 sharply divided Appellate Division has since upheld the judgment entered on these verdicts.
In their quest for a reversal of the order of affirmance, the appellants first urge that it was error for the trial court to charge subdivision (b) of section 1174. As their reasoning runs, that statute guards only against injuries sustained by pupils struck by motor vehicles traveling on the very highway on which a bus is stopped and therefore was inapplicable here, where Gagliardi was driving on Route 31 and the bus had dropped off the children on Wilson Road. On that premise, they erect a second contention: that, under a charge which presented an admixture of statutory and common-law theories of negligence, it was impossible to tell whether the jury reached its conclusions on common-law or statutory grounds, the impermissible statutory theory thus tainting the verdict irreparably. And, most sweepingly, in an argument which, though cast primarily in terms of proximate cause, commingles that concept with related considerations of duty and negligence, they insist the plaintiffs did not make out a prima facie case and that the complaint should therefore have been dismissed.[4] For the reasons which follow, I disagree on all counts.
At the outset, it may be well to make clear that while, under Van Gaasbeck v Webatuck Cent. School Dist. No. 1 (21 NY2d 239), a violation of subdivision (b) of section 1174 of the Vehicle and Traffic Law may give rise to absolute liability, the case before us now was not decided on such a theory. Instead, as already indicated, the jury was plainly instructed that the driver’s violation of the statute was merely "some evidence” of negligence and any contributing fault on Brigette’s part would be an absolute bar to her recovery. Since there was no objection, no cognizance is to be taken of the clear error in so charging (see Martin v City of Cohoes, 37 NY2d 162).
*757 Turning then at once to the question whether subdivision (b) provides protection only against motor vehicles traveling on the identical highway, the short answer is that there is nothing in its language which so confines the scope of the duty it defines. Appellant’s opposing view — that, since the companion subdivision (a) protects children only against vehicles which are on the same street as a stopped school bus, a so-called "logic of concomitant duties”, whatever , that entrancing phrase may mean, dictates that the same limitation apply to subdivision (b) — does not withstand analysis. Unlike subdivision (a), which focuses on the duty of a driver of a second vehicle "meeting or overtaking” a stopped school bus "from either direction”, subdivision (b) describes the bus driver’s far different obligations alone. And, while the single duty subdivision (a) imposes can only be triggered by "meeting or overtaking” a stopped bus, the many duties which are placed with the bus driver by subdivision (b) are in no way made to depend on the .presence or absence of another vehicle. In fine, our task being to find, not to alter, the legislative intent, I take subdivision (b) at its word (see Nanuet Nat. Bank v Eckerson Terrace, 47 NY2d 243).
Thus, in ordering the bus driver to direct his charges to cross in front of the bus, subdivision (b)’s unqualified command makes no distinction among such diverse circumstances as, for instance, whether a yet unseen and unseeing vehicle is about to arrive at the scene from around a blind corner, or whether one oncoming in plain view is about to pass the bus, or whether there is no other vehicle to be reckoned with at all. Similarly self-standing is the clear-cut requirement that, until the pupils have reached the opposite side of the street on which they have alighted, the bus continue at rest, its flashers going. And the same thing is to be said of the at least implicit compulsion that the bus driver inform himself as to "the pupils who must cross the highway”.
This said, the possibility that the jury found negligence on an impermissible theory disappears from this case. For, even absent the statute, and at a time when school busing and the dangers it entails were not as omnipresent as they are today, this court recognized a common-law duty in school bus drivers to exercise reasonable care for the protection of children who must cross a roadway after leaving the bus (McDonald v Central School Dist. No. 3, 289 NY 800). Consequently, assuming for the moment that there was sufficient proof of negli *758 gence and causation to take this case to the jury on those issues, it did not matter on which of the two theories submitted the jury reached its general verdict. Either the statutory or common-law ground would have served.
This brings us to the over-all question of whether plaintiffs made out a prima facie case. To that end, they had to demonstrate more than the existence of a duty. For, not only duty, but negligence and causality are, aside from damages, the basic elements germane to the determination of negligence cases (Green, Causal Relation Issue In Negligence Law, 60 Mich L Rev 543, 546). It therefore may be useful to the exposition of my analysis on this point, to essay, albeit briefly, some definition of the relevant concepts.
Duty, as we have seen, is essentially a legal term by which we express our conclusion that there can be liability. Simply, it tells us whether the risk to which one person exposes another is within the protection of the law. The determination of that question may take into account not only the facts in the particular case, but also, generally though not necessarily, foreseeability (Havas v Victory Paper Stock Co., 49 NY2d 381, 385-386; see, also, Pulka v Edelman, 40 NY2d 781). At times, as in the case before us now, it also may be spelled out in some detail by legislative history (see NY Legis Doc, 1954, No. 36, p 98). As Chief Judge Cardozo had occasion to put it, "the orbit of the duty” is "at times a question for the court, and at times, if varying inferences are possible, a question for the jury” (Palsgraf v Long Is. R. R. Co., 248 NY 339, 343, 345).
Negligence, on the other hand, bespeaking as it does the quality of the conduct which precedes or accompanies an act or omission, in the consideration of which foreseeability is instinct (see Nallan v Helmsley-Spear, Inc., 50 NY2d 507), calls for a finding that the defendant, exercising the foresight of an ordinarily prudent person in the circumstances presented by the case at hand, violated a duty one so positioned owed to the plaintiff. That is, did the defendant act with due care in the circumstances revealed by the evidence? Though the Trial Judge is not without power to examine the facts to determine in the first instance whether there are two sides to the question (Quinlan v Cecchini, 41 NY2d 686), the essentially factual nature of the issue means that its resolution most oft is for the jury (see Pound, Introduction to the Philosophy of Law [rév ed, 1954], p 71).
Finally, the element of causation may be said to provide the *759 essential link between negligent conduct and its consequences, between the harm threatened and the harm done. It answers the question whether the evidence is sufficient to support a reasonable inference that the defendant’s conduct contributed to the injuries or, at least, whether, in the circumstances, reasonable men here too may differ in the inferences they draw. Though negligence and causation frequently flow into one another, they are not the same; for one thing, the foreseeability that is indigenous to negligence is not always the same as the foreseeability relevant to causality, since the latter essentially is to be viewed as of the time when the damage was done while the former relates to the time when the act or omission occurred (see Sheehan v City of New York, 40 NY2d 496, 501; Hogan v Comac Sales, 245 App Div 216, 219, affd 271 NY 562; Restatement, Torts 2d, § 435). However, as is to an even greater extent true in fixing the bounds of duty, not only logic and science but policy and philosophy play a role in determining whether the current of causation is to stop at one point or another (Becker v Schwartz, 46 NY2d 401, 408; Ventricelli v Kinney System Rent A Car, 45 NY2d 950; Pagan v Goldberger, 51 AD2d 508, 510; Ortiz v Kihoshita & Co., 30 AD2d 334, 336-337; Prosser, Torts [4th ed], § 42, pp 244-249).
These principles before us, I find ample evidence in the record of the present case to support the Trial Judge in his submission to" the jury and to sustain the findings on negligence and causation implicit in the verdict rendered on the basis of the charge so given.
Clearly, the proof permitted the jury to conclude that the bus driver did not tell the children to cross only in front of the bus and that they in fact did not do so. This would have been in direct violation of the statutory duty and could be found to be in violation of a common-law standard of reasonable care as well. For common sense alone could be found to be enough to have alerted one entrusted with children to be conscious of the propensity of youngsters, unrestrained by a guiding hand, to do the very thing Brigette did — take the shortest rather than the safest way home. Beyond that, there is Gagliardi’s testimony that he never saw the brightly colored bus at or near .the intersection although he was approaching it on a straightaway for at least some 500 feet before he arrived at the point of impact. To that can be added the fact that the record could permit a fact finder to determine that very little time — pérhaps measured in seconds — had elapsed during the *760 interval in which the child, who had moved continuously from the time she alighted until the time she was struck, had traversed the relatively short distance she would have had to cover. Combining these two facts, it was surely within the province of the jury to infer that the bus had not waited until the children had reached a safe location, but had sped away to its next stop the instant Brigette and her companion had reached the street.
Furthermore, had the bus remained on the scene until Brigette had reached a place of safety, Gagliardi, though not within the embrace of subdivision (a) of section 1174 of the Vehicle and Traffic Law because he was proceeding along Route 31 whereas the bus had stopped on Wilson Road, may have been expected to see and appreciate the significance of the presence of the clearly identifiable school bus so close to the corner. So, the jury could have reasoned that, thus alerted to the probability that young children were about, Gagliardi would have been in a position to more readily respond by slowing his vehicle and bringing it under sufficient control to successfully avoid what would no longer have been a totally unexpected emergency.
To boot, in face, of the driver’s knowledge of the heavy traffic conditions on Route 31 and Brigette’s need to ultimately get to the northeast corner of the intersection, it was obvious that his failure to see her safely to the east side of Wilson Road would allow her to expose herself to the increased hazard of a longer and more irregular navigation of that busy highway. In any event, the Legislature had decided not to leave the matter to imagination or judgment. The statute was explicit. But, if it were not, the driver’s failure to accommodate to these foreseeable consequences could be found to run afoul of due care. So much for negligence.
Very little more need be added on causation. Here most of the facts that established the negligence phase of the case also sufficed to permit a logical finding that the conduct of the bus driver was at least a substantial factor in producing the injuries. Indeed, though closeness of time and place are not always essential to a finding of causality (cf. Bird v St. Paul, Fire & Mar. Ins. Co., 224 NY 47, 53-54; see 1 NY PJI 214-215; Restatement, Torts 2d, § 433, Comment f), there was nothing remote about the sequence of events or the spatial or temporal considerations that surrounded them (cf. Pratt v Robinson, 39 NY2d 554 [accident occurring three blocks from bus stop]). *761 Ergo, it cannot be said that the presence of a vehicle on Route 31 was an interruption of the natural train of things set in motion by the bus driver’s failure to see the child across Wilson Road in front of the bus (see, generally, Sheehan v City of New York, 40 NY2d 496, 503-504, supra).
In all, the danger to the children was patent and the result was no more than might have been expected.
It is for all these reasons that I cast my vote for the result reached by the Appellate Division.

. Subdivision (a) of section 1174 reads:
"Overtaking and passing school bus.
"(a) The driver of a vehicle upon a highway outside of the city of New York upon meeting or overtaking from either direction any school bus * * * which has stopped on the highway for the purpose of receiving or discharging any school children shall stop the vehicle before reaching such school bus when there is in operation on said school bus a red visual signal * * * and said driver shall not proceed until such school bus resumes motion, or until signaled by the driver or a police officer to proceed.”

. The City of Lockport Board of Education had also been joined as a party defendant, but the plaintiffs (the infant and her mother, who also sued derivatively) settled their case against it before trial. However, at the end of the trial, a cross claim pleaded against the board for apportionment was submitted to the jury who decided it adversely to the appellants.

. Comparative negligence does not apply to causes of action, such as that here, accruing prior to September 1, 1975 (CPLR 1411, 1413).

. Appellants also claim that the Trial Judge’s tolerance of attempts to prove or argue that the bus stop might more safely have been located at another point was reversible error. In our view, this too lacks merit. Most important, the Trial Judge in his charge in no way included the location of the bus stop as an element which permissibly could be considered in arriving at a determination of whether appellants were liable. Moreover, only the board of education, who alone designated the bus stop, could be liable on the theory that it was inherently unsafe (see Pratt v Robinson, 39 NY2d 554) and, since the apportionment claim against it did not succeed (n 2, supra), it must be deemed to have been rejected substantively. We also agree with the observation at the Appellate Division that no proof that the bus stop was unsafe emanated.