JUANITA LOGAN, Individually and as Parent and Natural Guardian of DARLENE LOGAN, an Infant, Appellant, v CITY OF NEW YORK et al., Respondents.

First Department, June 29, 1989

APPEARANCES OF COUNSEL

*Lawrence Goldhirsch* of counsel *(Abraham Fuchsberg* with him on the brief; *Fuchsberg & Fuchsberg,* attorneys), for appellant.

- *William J. Thom* of counsel *(Barry P. Schwartz* with him on the brief; *Peter L. Zimroth, Corporation Counsel,* attorney), for respondents.

**OPINION OF THE COURT**

KASSAL, J.

It has long been recognized that a Board of Education has a duty, arising from the fact of its physical custody over students, to exercise the same degree of care and supervision which a reasonably prudent parent would employ in the given circumstances. *(Ohman v Board of Educ.,* 300 NY 306, 309; *Pratt v Robinson,* 39 NY2d 554, 560.) In the case before us, plaintiff's claims of negligent supervision raise sufficient triable issues to preclude the grant of summary judgment dismissing the complaint insofar as it alleges a breach of this duty by the defendant Board of Education.

On December 17, 1981, Darlene Logan, then a 12-year-old

student enrolled at Intermediate School 88 on West 114th Street in Manhattan, attended a social studies class located on the third floor of the school and, at the end of the period, went to her art class on the fifth floor. While there, Darlene's social studies teacher arrived and obtained the art teacher's permission to take her back to the social studies classroom to clean up papers the student had left behind. The social studies teacher escorted Darlene to the third-floor classroom and, when she had completed the task, directed her to return to the art classroom.

In the complaint filed on Darlene's behalf by her mother, plaintiff Juanita Logan, it is alleged that Darlene was accosted on the stairwell, as she approached the fifth floor, by three boys who also attended I.S. 88. The boys forced Darlene to accompany them to a locked ceramics room on the first floor where, after opening the door with a key, one of them, a 13 year old, raped her. The three boys were subsequently arrested and found guilty of charges, not specified in the within record, in Family Court proceedings.

A negligence action predicated on theories of breach of a special duty and negligent supervision was commenced against the City of New York and the Board in December 1982. Plaintiff appeals the grant of defendants' motion for summary judgment dismissing the complaint.

■ We are in agreement with the IAS court that the circumstances presented preclude, as a matter of law, a finding of liability based upon the failure of the city and the Board to provide police or school guard protection to Darlene. It is well established that "a municipality's duty to provide police protection is ordinarily one owed to the public at large and not to any particular individual or class of individuals" and that, absent a "special relationship" which creates a "special duty", a claim grounded in the lack of such protection is legally insufficient and must be dismissed. (Cuffy v City of New York, 69 NY2d 255, 260, 261, citing Moch Co. v Rensselaer Water Co., 247 NY 160.) As Cuffy instructs, a special relationship is comprised of the following elements: (1) an assumption by the municipality, through promises or actions, of an affirmative duty to act on behalf of the party who was injured; (2) knowledge on the part of the municipality's agents that inaction could lead to harm; (3) some form of direct contact between the municipality's agents and the injured; and (4) that party's justifiable reliance on the municipality's affirmative undertaking.

In the case at bar, plaintiff asserts that a special duty arose by virtue of the school's deployment of security personnel throughout the building, the plaintiff parent's reliance upon such security measures in permitting her child to attend that particular school, and the actions of the teacher in removing the infant plaintiff from the safety of her classroom. As discussed hereinbelow, these factors are relevant in assessing plaintiff's claim of liability based upon negligent supervision. However, the courts have consistently rejected such arguments with respect to claims predicated on inadequate police or school guard protection.

In *Glick v City of New York* (53 AD2d 528, *affd* 42 NY2d 831), for example, this court dismissed the claim of a plaintiff who was assaulted by a 15-year-old student in a normally locked ladies room of a New York City high school, holding that the Board of Education had no duty to protect her, despite its implementation of security measures. Similarly, in *Vitale v City of New York* (60 NY2d 861), the complaint of a junior high school teacher who was assaulted when he tried to break up a fight in a school corridor, was dismissed on the ground that the security plan in effect at the school was designed to protect all students, school personnel, and visitors, and did not create a special relationship between him and the Board of Education. *(See also, Weinstein v Board of Educ.,* 127 AD2d 655 [negligence claim stemming from assault and robbery of a teacher when school guards were not at posts is not actionable in the absence of a special relationship].)

In *Rotz v City of New York* (143 AD2d 301), a lawsuit brought to recover damages for injuries sustained by plaintiff as the result of a stampede during a Diana Ross concert in Central Park, we likewise held that the cause of action premised upon inadequate police protection was properly dismissed on motion for summary judgment, because plaintiff had failed to establish the existence of a special duty of protection. We recognized, however, that the city had a separate obligation "to provide an adequate degree of general supervision of the crowd invited by exercising reasonable care against foreseeable dangers under the circumstances prevailing", and that the degree of care which is reasonable "necessarily depends upon the peculiar attendant circumstances of the particular case" since negligence "arises from breach of duty and is relevant to time, place and circumstance", and ordinary care must be "in proportion to the danger to be

avoided and the consequences that might reasonably be anticipated from the neglect" *(supra,* at 304-305).

This reasoning is equally applicable here, and we accordingly leave undisturbed the trial court's dismissal of those claims, both as to the city and the Board, which are premised upon the breach of a special duty, but hold that it was error for the court to have granted summary judgment dismissing the complaint insofar as it alleged a claim of negligent supervision by the Board.

Separate and distinct from a municipality's provision of police or school guard protection, is a duty owed by a school to its students, which "stems from the fact of its physical custody over them * * * [, for] by taking custody of the child, the school has 'deprived [the child] of the protection of her parents or guardian. Therefore, the actor who takes custody of * * * a child is properly required to give him the protection which the custody or the manner in which it is taken has deprived him' ". *(Pratt v Robinson, supra,* 39 NY2d, at 560, quoting Restatement [Second] of Torts § 320, comment d.) See also, PJI 2:227, which states, in pertinent part: "As concerns a Board of Education, negligence is the failure to exercise the same degree of care and supervision over the pupils under its control as a reasonably prudent parent would exercise under the same circumstances. * * * If you find that a reasonably prudent parent would have considered supervision required under all of the circumstances and that the Board had notice, actual or constructive [of a dangerous condition] for a sufficient length of time to permit it to provide supervision, your finding will be that the Board was negligent."

In the case before us, the infant plaintiff was attacked on the school premises after having been removed from her classroom by a teacher, escorted to another floor, and then left to return unescorted to the first classroom, two floors above. On this record, we decline to find, as a matter of law, that the teacher's actions were those of a reasonably prudent parent. *(Cf., Salmond v Board of Educ.,* 131 AD2d 829 [plaintiff assaulted when outside of the school building in violation of school safety regulations].) Bearing in mind that the particular circumstances of each case must be examined to determine whether the supervision was adequate, we conclude that the record before us is factually deficient in several critical aspects.

We note, for example, that the school in which this incident

took place, had established careful security measures which included the posting of two security guards and at least two school aides on each floor. The question which these measures raise—and which is not to be confused with whether there was a special duty to protect Darlene—is whether the Board had notice, actual or constructive, that a child was at risk of attack if left unescorted to travel the stairwells of this school at a time other than the scheduled change-of-class intervals. *(See, Alferoff v Casagrande, 122 AD2d 183; Ferraro v Board of Educ., 32 Misc 2d 563, affd 14 AD2d 815.)* This cannot be resolved without reference to the history, if any, of violence at the school, for "while a school is not an insurer of student safety, it will be held liable in damages for a foreseeable injury proximately related to the absence of supervision". *(Cavello v Sherburne-Earlville Cent. School Dist., 110 AD2d 253, 255, lv dismissed 67 NY2d 601; see, Ferrara v Board of Educ., 116 AD2d 693.)*

Further raised by this record are questions regarding the adequacy of the supervision of the three boys, also students at the school, who were apparently roaming the building during class hours. They, as well as plaintiff, fall within the well-settled rule that "a school district is obliged to adequately supervise the activities of students within its charge". *(Cavello v Sherburne-Earlville Cent. School Dist., supra, at 255.)*

The Court of Appeals has instructed, generally, that, "[n]egligence cases by their very nature do not usually lend themselves to summary judgment" *(Ugarriza v Schmieder, 46 NY2d 471, 474)* since the question of whether a defendant has "acted reasonably under the circumstances * * * can rarely be decided as a matter of law". *(Andre v Pomeroy, 35 NY2d 361, 364.)* In a specific application of these principles to a case involving the Board of Education, we have held that, "[w]hether the actions of a school or school board are adequate and reasonable and, if not, whether its negligence was a proximate cause of an accident are almost always questions of fact." *(Benitez v New York City Bd. of Educ., 141 AD2d 457, 459, revd on other grounds 73 NY2d 650.)*

In *Benitez,* the Court of Appeals distinguished the claims of student athletes injured during school games, from those, such as presented herein, which stem solely from a breach of the school's duty to act in loco parentis: "The trial court erroneously instructed the jury that a school owes a student voluntarily competing in an interscholastic high school football game the more protective duty and standard of care of a

prudent parent * * *. In the context of wholly voluntary participation in intramural, interscholastic and other school-sponsored extracurricular athletic endeavors, we have required the exercise of the less demanding ordinary reasonable care standard" *(supra,* 73 NY2d, at 656).

In the matter before us, it is also apparent that facts essential to justify opposition to the motion for summary judgment are unavailable to plaintiff and, indeed, are likely to be exclusively within the knowledge of the defendants, a factor which renders summary judgment relief particularly inappropriate. (CPLR 3212 [f]; *Nordlicht v Norton Simon, Inc.,* 70 AD2d 511.) Included in this category are the circumstances under which the boys were able to leave their classrooms, remain in the halls and stairwells of the building undetected, and obtain a key to a classroom normally kept locked.

To the extent that the Family Court records sought by plaintiffs may contain information that sheds light on these and other areas relevant to the issue of the adequacy of the Board's supervision, we conclude that an in camera inspection should be conducted and, if appropriate, discovery accorded to plaintiffs. We note, in this regard, that respondents did not object to such discovery below, and that the Corporation Counsel's office submitted an affirmation stating that it was not opposed to plaintiffs' application for access to these Family Court records.

Accordingly, the judgment, Supreme Court, New York County (Eugene Nardelli, J.), entered April 12, 1988, which granted the motion of defendants, the City of New York and the Board of Education of the City of New York, for summary judgment dismissing the complaint, should be modified, on the law, to deny the motion for summary judgment and reinstate the complaint, solely with respect to claims of negligent supervision by the Board, and plaintiffs' cross motion for the production of certain Family Court records should be granted to the extent of directing the clerk of said court to produce the records for in camera inspection and determination of discoverability by the IAS court, and otherwise affirmed, without costs. To the extent the order entered on or about July 27, 1988 denies reargument, the appeal therefrom is dismissed as nonappealable, and to the extent the order seeks renewal, the appeal therefrom is dismissed in view of this court's modification of the aforesaid judgment, without costs.

MURPHY, P. J., SULLIVAN and ELLERIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on April 12, 1988, unanimously modified, on the law, to deny the motion for summary judgment and reinstate the complaint, solely with respect to claims of negligent supervision by the Board, and plaintiffs' cross motion for the production of certain Family Court records should be granted to the extent of directing the clerk of said court to produce the records for in camera inspection and determination of discoverability by the IAS court and otherwise affirmed, without costs and without disbursements, and to the extent that the order of said court entered on or about July 27, 1988 denied reargument, the appeal therefrom is dismissed as nonappealable, and to the extent the order seeks renewal, the appeal therefrom is dismissed in view of this court's modification of the aforesaid judgment, without costs and without disbursements.