[907 NYS2d 373]

KAREN BEGLEY et al., Individually and as Administrators of the Estate of JONATHAN BEGLEY, Deceased, Plaintiffs, v CITY OF NEW YORK et al., Defendants.

Supreme Court, Richmond County, May 24, 2010

## APPEARANCES OF COUNSEL

*Michael A. Cardozo, Corporation Counsel*, for City of New York and others, defendants. *Callan, Koster, Brady*, for the Forum School, defendant. *Catalano & Gallardo*, for Michelle Timothy, defendant. *Guercio & Guercio* for plaintiffs.

## OPINION OF THE COURT

THOMAS P. ALIOTTA, J.

The motion (No. 3273) of defendants City of New York and the New York City Department of Education for summary judgment dismissing the complaint and any cross claims against them is granted, as is the motion (No. 308) of defendant Michelle Timothy, R.N., to strike plaintiffs' corrections to their depositions pursuant to CPLR 3126; the motions (Nos. 2956 and 3049) of defendants the Forum School and Michelle Timothy, R.N., respectively, for summary judgment dismissing the complaint and any cross claims against them are granted, in part, and denied, in part, in accordance with the following.

It is uncontroverted that plaintiffs' deceased, Jonathan Begley, who was born on January 10, 1995, suffered from autism, severe asthma and life threatening allergies. At the request of the Begleys and pursuant to Education Law § 4404, a hearing was conducted by the New York City Department of Education, which, on July 13, 2001, ordered the Committee on Special Education of Community School, District 20, to complete an individualized educational plan (hereinafter IEP) for Jonathan for the 2001-2002 school year. As therein provided, the following special education and related services were to be implemented for Jonathan at no cost to the Begleys: (1) placement in a nonpublic school, i.e., the Forum School, located in Waldwick, New Jersey, in a full-day, 12-month special education program; and (2) his transportation to and from said school, in the company of a registered nurse, who was to remain with the infant while on school premises for the purpose of addressing his periodic need for the use of a nebulizer and any other medical eventuality.

For three years, Jonathan attended the Forum School without incident. However, on July 21, 2004, during the summer session, Jonathan suffered an anaphylactic reaction which necessitated his hospitalization. He died two days later on July 23,

2004. In the present action, plaintiffs claim, inter alia, that their son was negligently permitted to become exposed to blueberries, either by touching or ingesting them, during classroom instruction based on a children's book entitled "Blueberries for Sal," notwithstanding the purported direct supervision of defendant Forum School and his private nurse, defendant Michelle Timothy (hereinafter nurse Timothy). Plaintiffs also allege as negligent the Forum School's decision to remove nurse Timothy from Jonathan's classroom to visually monitor him from the hallway outside on the ground that her physical presence was interfering with his independence and development.

In their complaint, plaintiffs maintain, inter alia, that defendants Forum School and nurse Timothy (1) breached their duty to monitor, supervise and control Jonathan, (2) failed to exercise reasonable care in protecting him from injury, i.e., exposing him to a known or unknown allergen, and (3) failed to properly diagnose, manage and treat Jonathan's allergic reaction pursuant to his prescribed protocol, thereby allowing his anaphylaxis to progress to the point of death.

In her motion (No. 308) pursuant to CPLR 3126 and 3116 (a), nurse Timothy moves to strike (1) the "Corrections to Depositions" of Karen Begley taken on May 24, 2006, June 20, 2006 and July 17, 2007, and (2) the "Corrections to Deposition" of Brian Begley taken on July 18, 2007, both of which were notarized by the Begleys on April 23, 2008. In support, nurse Timothy maintains that the purported correction sheets (1) were not served upon her within the requisite 60 days of submission of the deposition transcripts to the Begleys for their review, and (2) failed to include the statements of reason required by CPLR 3116 (a) for making the corrections. In addition, she argues that certain of the corrections "grossly contradict [plaintiffs'] prior testimony," and that they propose "wholesale changes . . . go[ing] to the heart of a significant issue in this case." In particular, nurse Timothy disputes certain alleged substantive changes, chief among them the claim that Jonathan was known to be allergic to blueberries. At their depositions, plaintiffs' testimony was that their son had not undergone challenge testing (e.g., a scratch test) *specifically* for blueberries, and that they never observed him having an anaphylactic reaction to them. According to nurse Timothy, she would be severely prejudiced by plaintiffs' use of these substantive corrections for any purpose, including their opposition to the pending summary judgment motions and at trial.

The court agrees.

■ Plaintiffs at bar have failed to offer sufficient reason for their untimely proffered changes to their deposition testimony, some of which rather than "clarifying or correcting obvious or even subtle transcription errors, contradict crucial elements," e.g., Mrs. Begley's deposition testimony regarding the cause of her son's anaphylactic reaction on the day in question (*Zamir v Hilton Hotels Corp.*, 304 AD2d 493, 494 [2003]). In this regard, although Mrs. Begley maintains, in her affidavit in opposition, that her "review of the deposition transcripts and delay in submission of the correction sheets was due to the extreme difficulty of reviewing approximately six hundred pages of testimony relating to an extremely emotional matter," her conclusory statement that she recalled events and/or facts that she could not recall during her deposition is insufficient, standing alone, to explain the self-serving, substantive amendments to her deposition testimony (*see* CPLR 3116 [a]; *Marzan v Persaud*, 29 AD3d 652, 653 [2006]; *Zamir v Hilton Hotels Corp.*, 304 AD2d at 494). Under these circumstances, plaintiffs' deposition testimony should remain unaltered, and the motion to strike the proposed corrections is granted.

With this established, the court turns to the various summary judgment motions.

The City of New York (hereinafter the City) and the New York City Department of Education (hereinafter DOE) move for summary judgment dismissing the complaint and any cross claims against them on the ground that plaintiffs have failed to establish any act or omission on the part of either that was a proximate cause of Jonathan's acute anaphylaxis and death. In support, the municipal defendants maintain, inter alia, that since no autopsy was performed, the particular "agent" that caused Jonathan's severe allergic reaction remains unknown. Relying upon plaintiffs' failure to offer any medical/scientific evidence or an expert's opinion identifying the substance that triggered the event, the municipal defendants argue that the determination of the cause or causes of Jonathan's anaphylactic reaction could only be based on speculation, guess or surmise.

They further point to the absence of (1) any prior complaints to DOE concerning Jonathan's IEP and/or the special education provided for him by the Forum School or the medical services rendered by his private nurse, (2) prior notice that nurse Timothy had been "reassigned into the hallway," or (3) notice of any other potential source of harm. It is also argued that the

Forum School is privately owned and operated, and that neither the City nor DOE exercised any control or supervision over its premises, programs and employees. Somewhat similarly, it is argued that nurse Timothy was an independent contractor, i.e., an "Independent Provider," who was neither retained, trained nor supervised by DOE, but rather, was recruited, interviewed and selected solely by the Begleys. Stated otherwise, the municipal defendants assert that none of its codefendants were agents or employees of the City, or in any way performed their jobs under the direction or supervision of DOE. Hence, neither the City nor DOE can be held vicariously liable for their negligence, if any, in the care of the decedent.

Finally, it is alleged that governmental immunity bars plaintiffs' claims of, e.g., negligence arising out of DOE's performance of its discretionary functions relating to Jonathan's special education and related services. In addition, the City maintains that it is not a proper party to this action, since DOE is a body corporate, separate and legally distinct from it.

In opposition, plaintiffs claim that defendant DOE failed to exercise reasonable care in recommending placement of the decedent into the Forum School, and in monitoring such placement and related nursing services as required by the Individuals with Disabilities Education Act (20 USC § 1400 *et seq.*) and article 89 of the Education Law. Plaintiffs further maintain that nurse Timothy was, in reality, an employee and/or agent of DOE, therefore rendering it vicariously liable for the negligent performance of her professional duties. In support, it is alleged that (1) nurse Timothy had been issued a DOE identification card, and (2) DOE entered into a "direct contract" with her by executing a "Related Services Authorization" (RSA-2) form dated December 22, 2003, relative to the nursing services to be provided to Jonathan in accordance with his IEP.

In this regard, plaintiffs maintain that DOE's obligation to provide, implement and supervise Jonathan's special education and related nursing services constituted a nondelegable duty under both the Individuals with Disabilities Education Act and Education Law § 4402 (2), and that DOE breached this duty by failing to supervise and monitor the services provided by the Forum School and nurse Timothy.

Additionally, plaintiffs contend that whenever specific individuals (whether skilled or unskilled) are required to meet a special education student's instructional needs or related services, DOE must fill such position by appointing a district em-

ployee (*see* Education Law § 3012). In particular, plaintiffs base their claim on the Board of Education's purported inability to legally contract with independent contractors to provide related "school health services." Thus, as applicable here, plaintiffs' argue that DOE's authority was limited, as a matter of law, to either (1) hiring nurse Timothy as an employee, (2) seeking the required nursing services from a neighboring school district, or (3) contracting for such related services with a Board of Cooperative Educational Services (BOCES). For all these reasons, plaintiffs contend that, however hired, nurse Timothy must be deemed to be an employee of DOE.

Turning first to the unopposed branch of the municipal defendants' motion for the dismissal of all claims against the City, it is well settled that DOE is a legal entity separate and distinct from the City of New York (*see McClain v City of New York*, 65 AD3d 1020 [2009]; *Perez v City of New York*, 41 AD3d 378, 379 [2007], *lv denied* 10 NY3d 708 [2008]). Hence, there is no legal basis for holding the City vicariously liable for the alleged torts of DOE or any of its employees in the case at bar (*id.*).

■ As to the balance of their motion to dismiss, the court finds that DOE has established prima facie that it faithfully discharged its statutory duty pursuant to article 89 of the Education Law to provide Jonathan with the education and related services necessitated by his special needs by formulating and implementing an IEP for the child. Jonathan's IEP was thereafter reviewed and revised annually at a conference conducted by DOE's Committee on Special Education (hereinafter CSE) that addressed, inter alia, his current level of (1) academic performance, (2) language and cognitive development, (3) social/emotional performance, (4) health and physical development and (5) participation in school activities, in order to determine the annual educational goals and short-term objectives for the infant, as well as the school environment and related services recommended to achieve same. Significantly, based on the papers presently before this court, DOE established that Jonathan's last IEP was formulated after a June 10, 2004 CSE review meeting attended by both plaintiffs (Jonathan's parents) and members of the DOE, CSE and two teachers from the Forum School. Following this review, it was determined to continue his placement in the Forum School under the auspices of a registered nurse, and to provide for his transportation to and from school in an air-conditioned minibus accompanied by his nurse and "no other students." Notably, plaintiffs do not al-

lege that their son's medical conditions, educational needs and/or related special requirements were not adequately addressed in any of Jonathan's annual IEPs relating to the Forum School (*cf. Troy v North Collins Cent. School Dist.*, 267 AD2d 1023 [1999]).

Of further relevance is the uncontroverted affidavit of the DOE's Chairperson of the Committee on Special Education for District 31, Claire Donnellan, which serves to demonstrate prima facie that although the IEP assesses a student's special needs and identifies the goals that the student is meant to attain, it is not intended to mandate the "means or methods" of performance to be employed in furtherance of the stated goals.

Turning to plaintiffs' claim that a school district has a "nondelegable duty" to physically supervise a disabled child while he or she receives instruction, the Appellate Division, Second Department, held in January 2010 that "[a]lthough a school has a statutory duty to provide special education services to children who require them, where the school has appropriately contracted-out that duty, it cannot be held liable on a theory that the children were in [the school's] physical custody at the time of injury" (*Ferraro v North Babylon Union Free School Dist.*, 69 AD3d 559, 560 [2010] [internal quotation marks and citations omitted]).

Here, DOE contracted with a nonpublic educational facility specifically located and selected by his parents and over which it clearly lacked any authority or control to provide for his special educational needs. Since Jonathan must therefore be deemed to have "passed outside the [DOE's] orbit of authority," any claims against it sounding in negligent supervision by the Forum School must be dismissed (*id.*). As stated in *Pratt v Robinson* (39 NY2d 554, 560 [1976]), a school's duty to supervise a child is "coextensive with and concomitant to its physical custody of and control over the child."

In opposition to DOE's prima facie showing, plaintiffs have failed to raise a triable issue of fact as to whether or not Jonathan was within DOE's "orbit of authority" when the death-inducing exposure occurred (*see Ferraro v North Babylon Union Free School Dist.*, 69 AD3d 559, 560 [2010]; *cf. Troy v North Collins Cent. School Dist.*, 267 AD2d 1023 [1999]).

Turning to the contention that DOE is vicariously liable for the actions of its alleged employee, nurse Timothy, it is pertinent to note that the "Related Services Authorization" entered into with the nurse on or about December 22, 2003 expressly states

that it is an "agreement by the parent and [independent] provider" for nursing services approved by DOE, and requires that the provider carry his/her own professional malpractice/liability insurance. It further states that "[a]ny individual that is a current employee of the New York City Department of Education or of any other city agency may *not* provide services under [the] agreement" (emphasis supplied). Thus, plaintiffs' reliance upon this authorization to establish that nurse Timothy was an employee of DOE is misguided, at best. To the contrary, the proof before the court indicates that nurse Timothy was supervised solely by Mrs. Begley, who in form at least, contracted for her services.

Also unavailing is plaintiffs' contention, based on certain DOE memoranda dated nearly a year after Jonathan's death, that the Internal Revenue Service prompted a change in DOE's protocol regarding the hiring of individuals such as nurse Timothy as "consultants" rather than as "employees." Plainly, these memos, bearing an effective date of July 1, 2005, have no bearing on the nature of the nursing services rendered by nurse Timothy to plaintiffs' son. Pertinently, the deposition testimony of Catherine Friscia, DOE's Deputy Director of the Office of Related and Contractual Services, and the affidavit of Lawrence Becker, DOE's Chief Executive Officer of the Division of Human Resources, clearly establish that wherever else it was employed, the "consultant process" was never utilized to hire nurses. Rather, DOE's custom and practice has been to obtain nurses through a "Related Service Authorization" agreement when a nurse on staff or already under contract is not available to provide the specific services in question.

Finally, all of the cases cited by plaintiffs in support of the proposition that DOE lacks the authority to retain independent contractors to perform student-related services are inapposite. Each applies to supervisory, teaching and other pedagogical positions, including school social workers and school psychologists, but not a single case concerns a medical service position.

Based on all of the foregoing, the court finds that no triable issue of fact has been raised as to DOE's authority to retain nurse Timothy as an independent service provider rather than an employee. Accordingly, plaintiffs' claim that DOE breached a "nondelegable duty" to supervise Jonathan while attending the Forum School and/or to monitor the day-to-day performance of both the school and the nurse must be rejected as a matter of law (*Ferraro v North Babylon Union Free School Dist.*, 69 AD3d

at 560). In sum, plaintiffs have failed to raise a triable issue of fact regarding the legal obligation on the part of the DOE to retain, train or supervise nurse Timothy as an employee, and/or supervise, direct or control the special education provided to Jonathan by the Forum School.

■ Turning to the branch of nurse Timothy's motion which is for summary judgment dismissing all claims for gross negligence or punitive damages, it is well settled that New York does not recognize an independent cause of action for punitive damages (*see Aronis v TLC Vision Ctrs., Inc.*, 49 AD3d 576, 577 [2008]; *Randi A. J. v Long Is. Surgi-Ctr.*, 46 AD3d 74, 80 [2007]). Therefore, plaintiffs' sixth cause of action must be dismissed. Moreover, in the context of a private tort action, "[p]unitive damages are available for the purpose of vindicating a public right only where the actions of the alleged tort-feasor constitute gross recklessness or intentional, wanton or malicious conduct aimed at the public generally or are activated by evil or reprehensible motives" (*Gravitt v Newman*, 114 AD2d 1000, 1002 [1985]; *see Aronis v TLC Vision Ctrs., Inc.*, 49 AD3d at 577).

Here, plaintiffs contend that punitive damages are warranted against nurse Timothy since she is purported to have acted with gross recklessness and in wanton disregard of Jonathan's welfare by failing to furnish him with the caliber of care that he required. However, there is no evidence before this court manifesting (1) the high degree of moral turpitude, (2) willful, wanton or malicious conduct or (3) gross recklessness necessary to sustain an award of punitive damages against *any* of these defendants (*see Aronis v TLC Vision Ctrs., Inc.*, 49 AD3d at 577; *Hill v 2016 Realty Assoc.*, 42 AD3d 432, 433 [2007]; *Anderson v Elliott*, 24 AD3d 400, 402 [2005]; *Lee v Health Force*, 268 AD2d 564, 565 [2000]). Moreover, there has been no showing that their conduct was "aimed at the public generally."

In addition, although the question of gross negligence is ordinarily one of fact for a jury (*see Lubell v Samson Moving & Stor.*, 307 AD2d 215, 216 [2003]), here, there is a total lack of evidence that any negligence on the part of either nurse Timothy or the Forum School differs *in kind* from ordinary negligence (i.e., careless conduct). Also, there is no proof of "wanton or malicious" conduct, or behavior "activated by evil or reprehensible motives" in this case (*Anzolone v Long Is. Care Ctr., Inc.*, 26 AD3d 449, 450-451 [2006] [citations omitted]; *Lubell v Samson Moving & Stor.*, 307 AD2d at 216-217). Accord-

ingly, the absence of gross negligence can be determined as one of law, and both nurse Timothy and the Forum School are entitled to summary judgment dismissing any claims against either or both sounding in gross negligence and/or (as aforesaid) for punitive damages.

However, the remaining branches of nurse Timothy's motion for summary judgment (1) dismissing the complaint and any cross claims against her or, alternatively, (2) dismissing all claims and cross claims sounding in negligent supervision and medical malpractice, must be denied. Here, questions of fact continue to exist regarding, inter alia, the sufficiency of nurse Timothy's supervision and whether this defendant acted in accordance with accepted nursing standards and pursuant to his physician's protocol in assessing, monitoring and treating Jonathan's anaphylactic reaction.

Similarly, defendant Forum School has also failed to establish its entitlement to summary judgment on any of the other causes of action asserted against it. More specifically, the voluminous papers before this court raise triable issues of fact including but not limited to (1) whether or not the Forum School adequately supervised Jonathan relative to his exposure to potential allergens on the day in question, (2) the reasonableness of its decision to require nurse Timothy to remain outside Jonathan's classroom, and (3) whether it acted reasonably in responding to his emergency or in assessing, monitoring and treating Jonathan's anaphylactic reaction.

Accordingly, it is ordered that the motion by defendant Michelle Timothy, R.N., pursuant to CPLR 3126 to strike plaintiffs' corrections to their deposition testimony is granted; and it is further ordered that the motion for summary judgment by defendants the City of New York and the New York City Department of Education is granted, and the complaint and any cross claims against these defendants are hereby severed and dismissed; and it is further ordered that the motions by defendants the Forum School and Michelle Timothy, R.N., for summary judgment are granted to the extent of severing and dismissing only the sixth cause of action for punitive damages and any claims or cross claims against them as are predicated upon their purported gross negligence; and it is further ordered that the balance of said motions are otherwise denied; and it is further ordered that the caption is amended to read as follows:

## SUPREME COURT OF THE STATE OF NEW YORK
## COUNTY OF RICHMOND

KAREN BEGLEY and BRIAN BEGLEY, as Administrators of the Estate of JONATHAN BEGLEY, Deceased, and KAREN BEGLEY and BRIAN BEGLEY, Individually, Plaintiffs, v THE FORUM SCHOOL and MICHELLE TIMOTHY, R.N., Defendants.