SHAWN H. MARTINEZ, Individually and as Administrator of the Estate of SHAWN L. MARTINEZ, Respondent, v CITY OF NEW YORK et al., Appellants, et al., Defendant. [935 NYS2d 45]—

On February 26, 2003, Shawn L. Martinez (hereinafter Shawn) died of an asthma attack. That morning, Shawn, an 11-year-old student at Clinton Middle School and lifelong asthmatic, reported to the nurse's office complaining of coughing and on-and-off wheezing. His inhaler of medication was empty, he explained to the nurse, Magdalin James, and his mother had known this before sending him to school that morning. Shawn's father was contacted and, ultimately, his mother arrived at the school. Although James did not consider it an emergency when Shawn left the school with his mother, she told the mother that if she did not have any medication, she should take him straight to the emergency room. The mother replied that she was going to take Shawn home and treat his asthma with a nebulizer. The mother then drove Shawn home. They walked up four flights of stairs to their apartment, and Shawn's breathing changed. The mother began treating Shawn with the nebulizer and contacted emergency medical personnel, who arrived on the scene to find Shawn in cardiac arrest. Shawn was transported to the hospital, where he died.

Thereafter, Shawn's father, the administrator of his estate, commenced this action against, among others, the City of New York and the Board of Education of the City of New York (hereinafter together the municipal defendants), Comprehensive Resources, Inc. (hereinafter Comprehensive), the nursing placement agency, and James. The municipal defendants, Comprehensive, and James moved for summary judgment dismissing the complaint insofar as asserted against each of them on the ground that the duty owed to Shawn ended once he was released into the care and custody of his mother. The Supreme Court denied their respective motions. We reverse.

There can be no negligence if there is no duty (see Pratt v Robinson, 39 NY2d 554, 559 [1976]; Palsgraf v Long Is. R.R. Co., 248 NY 339, 342 [1928]). For a school, the duty it owes to its students stems from the fact of its physical custody over them (see Pratt v Robinson, 39 NY2d at 560). Its duty is "coextensive with and concomitant to its physical custody of and control over the child. When that custody ceases because the child has passed out of the orbit of its authority in such a way that the parent is perfectly free to reassume control over the child's protection, the school's custodial duty also ceases" (id.). However, while a school's duty of care toward a student generally ends when it relinquishes custody of the student, the duty continues when the student is released "without further supervision into a foreseeably hazardous setting it had a hand in creating" (Ernest v Red Cr. Cent. School Dist., 93 NY2d 664, 672 [1999]).

Here, James satisfied her prima facie burden of establishing her entitlement to judgment as a matter of law. James demonstrated that Shawn was not released without further supervision into a foreseeably hazardous setting, but into the care and custody of his mother, who planned to take him home and administer a nebulizer treatment to him. None of the adults who observed Shawn prior to his departure with his mother considered the situation an emergency. James testified at her deposition that she did not consider it an emergency because while Shawn was having difficulty breathing, he was not suffering from an acute asthma attack. At one point before the mother arrived, a doctor who happened to be at the school conducting physical examinations said that James should call 911. James went to ask permission from the principal to call 911, concerned that Shawn was without medication and had been in her office for a while, but Shawn's father called the school and told James that Shawn's mother was on her way. James, who could only hear Shawn's wheezing with a stethoscope at that time, told the

doctor that she could not find the principal, and the doctor told James to wait a few more minutes for Shawn's mother. Shawn's mother herself, who had treated Shawn's asthma for 10 years and had taken him to the emergency room on past occasions when he suffered a severe attack, indicated that she did not consider it an emergency. She noted that his wheezing was no different from his wheezing at any other time, and her actions in taking Shawn home belie any claim that she thought the situation was an emergency. Thus, the evidence established, as a matter of law, that Shawn was released into a "safe spot," with his mother, who understood his condition, and planned to treat his attack with medication at home (*id.* at 672; *see Pratt v Robinson*, 39 NY2d at 561). Shawn's mother was "perfectly free" to reassume control over his protection and in fact did so by taking physical custody of him, removing him from school grounds, and deciding the appropriate measure of care (*Pratt v Robinson*, 39 NY2d at 560; *see Williams v Hempstead School Dist.*, 46 AD3d 550, 552 [2007]). In opposition to this prima facie showing, the plaintiff failed to raise a triable issue of fact (*see Williams v Hempstead School Dist.*, 46 AD3d at 552; *Griffith v City of New York*, 123 AD2d 830 [1986]). Therefore, James was entitled to summary judgment dismissing the complaint insofar as asserted against her.

Since the liability of the municipal defendants and Comprehensive is dependent on a finding that James was negligent, they were entitled to summary judgment dismissing the complaint insofar as asserted against them (*see Karaduman v Newsday, Inc.*, 51 NY2d 531, 546 [1980]; *Pereira v St. Joseph's Cemetery*, 54 AD3d 835, 837 [2008]; *Williams v Hempstead School Dist.*, 46 AD3d at 552; *Pfeiffer v General Elec. Co.*, 7 AD3d 598 [2004]). Dillon, J.P., Florio, Eng and Chambers, JJ., concur.